515 A.2d 1320

**CITY COUNCIL OF the CITY OF BETHLEHEM and Jack Lawrence, City Councilman, Appellants,**

v.

**Paul M. MARCINCIN, Appellee.**

Supreme Court of Pennsylvania.

Argued May 13, 1986.

Decided Oct. 3, 1986.

Reargument Denied Dec. 30, 1986.

Daniel E. Cohen, Easton, for appellants.

Frank S. Poswistilo, Easton, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

The point of dispute in this appeal is the compatibility of the Third Class City Code ("the Code")[1] and Third Class City Charter Law ("the Charter Law") (Act of July 15, 1957, P.L. 901, § 101, 53 P.S. § 41101 *et seq.* (Supp.1986)) with City of Bethlehem Ordinance 2389 (Bethlehem, Pennsylvania, Ordinance 2389 (Oct. 18, 1973)). Pursuant to that ordinance, an incumbent mayor can seek only one term of reelection. We conclude, for the reasons that follow, that a reasonable limitation on the mayoral term of office is in harmony with the scope of authority granted to third class cities by the Code and the Charter Law. To limit the mayoralty to two terms in no way denies the right of reelection to an incumbent mayor, rather it provides, prospectively, a reasonable limit to the number of consecutive terms he can serve as mayor of a third class municipality. Therefore, we reverse the Order of the Common Pleas Court.

The facts as determined by the court below are not disputed. On October 18, 1973, the Council of the City of Bethlehem ("the Council") passed an ordinance which required that "[t]he Mayor shall hold his office during four years from the first Monday of January next ensuing his election. He shall be eligible to succeed himself for *only one additional term."* City of Bethlehem, Ordinance 2389 (Oct. 18, 1973) (emphasis added). Paul M. Marcincin, appellee herein, was first elected to the office of mayor in November of 1977 and took the oath of office in January,

---

1. Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. § 35101 *et seq.* The relevant § 701 provides that:

   The elected officers of each city shall be a mayor, four councilmen, a controller, and a treasurer. Except as provided in section seven hundred and two of this act with respect to the first election of members of council, each of such officers shall serve for a term of four years from the first Monday of January next succeeding his election, until the first Monday of January in the fourth year thereafter. *Any such officer shall be eligible to reelection.*
   *Id.,* § 35701 (emphasis supplied) (footnotes omitted).

1978.[2]  He was successful in his reelection bid and began his second term in 1982.  Marcincin was reelected to his third consecutive term on November 5, 1985.

Preceding his bid for a third term, appellee brought suit, in the Court of Common Pleas of Northampton County, for declaratory judgment challenging the validity of Ordinance 2389.  The court issued a decree on March 6, 1984 invalidating the provision in the ordinance restricting the terms of office for which a mayor may seek reelection.[3]  On January 21, 1986 the City Council of the City of Bethlehem instituted the instant action, the first count seeking a declaratory judgment and the second count in *quo warranto*.[4]  *City Council of the City of Bethlehem v. Paul M. Marcincin*, No. 1986–C–536.  The court below after determining that council had standing to request declaratory relief reaffirmed its earlier finding that the ordinance in question was invalid.  In view of this finding, the count in *quo warranto* seeking the invalidation of the November, 1985 mayoral election and the barring of Marcincin from office was dismissed.  Since the issues raised herein implicate the right to public office a direct appeal was taken to this Court pursuant to 42 Pa.C.S. 722(2).

The City of Bethlehem operates pursuant to the Code and the Charter Law, Mayor-Council Plan A (53 P.S. § 41401 *et seq.*, (Supp.1986)) whereby third class municipalities enjoy express authority of self-government.  Power to organize city governments flows from section 303 of the Charter Law.  53 P.S. § 41303 (Supp.1986).

2.  We note that Marcincin was first elected mayor four years after passage of Ordinance 2389.

3.  An appeal of that order was taken to this Court and dismissed for lack of ripeness.  The final order in this matter was entered below on March 6, 1985 prior to the November, 1985 election and the commencement of the challenged third term.  Thus those facts were not part of that record.

4.  The council requested the Attorney General and the District Attorney of Northampton County to institute a *quo warranto* to challenge Marcincin's attempt to serve a third consecutive term.  Both declined to take such action.

■ Section 301 (53 P.S. § 41301 (Supp.1986)) provides that a third class city whose voters have chosen some form of optional scheme of government, as prescribed by the Charter, shall be governed by that scheme and "... by the provisions of this act (the Charter Law) common to optional plans and by all applicable provisions of general law, ..." [5] Under section 303(1) of the Charter Law, the municipality clearly has the power to define the function, powers and duties of their officers and to fix the term, tenure and compensation for those positions.[6]

The instant municipality elected the Mayor-Council Plan A as set forth under section 401 *et seq.;* section 403 which provides:

The mayor, the treasurer and the controller shall be elected by the voters of the city at a regular municipal election, and shall serve for a term of four years begin-

5. § 41301. **Governing law; organic law; existing charters, laws and ordinances**

Upon the adoption by the qualified voters of any city of any of the optional plans of government set forth in this act, the city shall thereafter be governed by the plan adopted and by the provisions of this act common to optional plans and by all applicable provisions of general law, subject to the transitional provisions of Article VI of this act, unless and until the city should adopt another form of government as provided by law. The plan adopted and the provisions of this act common to optional plans shall become the organic law of the city at the time fixed by this act. So far as they are consistent with the grant of powers and the limitations, restrictions and regulations hereinafter prescribed, they shall supersede any existing charter, and all acts and parts of acts, local, special or general, affecting the organization, government and powers of such city to the extent that they are inconsistent or in conflict therein. All existing acts or parts of acts and ordinances affecting the organization, government and powers of the city not inconsistent or in conflict with the organic law so adopted shall remain in full force until modified or repealed as provided by law.

6. § 41303. **General powers**

Each city governed by an optional form of government pursuant to this act shall, subject to the provisions of and limitations prescribed by this act, have full power to:

(1) Organize and regulate its internal affairs, and to establish, alter, and abolish offices, positions and employments and to define the functions, powers and duties thereof and fix their term, tenure and compensation; ...

ning on the first Monday of January next following his election.

Clearly the ordinance in question is not incompatible with any of the aforementioned provisions. The alleged conflict stems from the language of section 701 of the Code which provides that the mayor "shall be eligible for reelection." Had the ordinance absolutely precluded a reelection by an incumbent mayor, the tension between the two provisions would be obvious. Here, however, we do not have a patent conflict. The first issue is whether the right to reelection under section 701 requires an unrestricted number of opportunities for reelection of an incumbent mayor.

■ Appellee argues that the Legislature, in retaining exclusive jurisdiction over the Office of Mayor in third class cities, has determined that under section 701, *supra,* an incumbent mayor has an unrestricted right of reelection as long as a majority of the electorate votes in his favor. Section 701, indeed, expressly extends the right of reelection to municipal offices. Nothing in the statutory language, however, indicates that the term "reelection" connotes an infinite number of successive opportunities of election to the same municipal office. Section 701 of the Code merely provides, *inter alia,* an express guarantee of the *right* of reelection. To read that right of reelection as requiring unrestricted opportunities for reelection is to read the language broader than the words of that section would require on its face. Such an interpretation would require a finding of an unstated, implicit qualification to the power granted under section 303(1). A limitation upon the terms of office an executive may hold is considered by many to be salutary, in that it encourages a fresh approach and tends to prevent stagnation and/or corruption that may follow an administration that may overstay its productivity. U.S. CONST. amend. XXII, § 1; 351 Pa.Code § 3.3–400. We will not restrict this option by implication.[7]

7. Unquestionably the citizens of a municipality would have the right to allow its executive officer to have the right to an unrestricted number of reelections. We are merely saying here that we will not

■ By frustrating his ability to stand for a third term as Mayor of the City of Bethlehem, Marcincin alleges that the Ordinance limits the right of the electors to vote freely for public officials. The Pennsylvania Constitution, article 1, section 5 mandates "free and equal" elections.[8] This Court has defined such elections thusly:

> ... elections are free and equal within the meaning of the Constitution when they are public and open to all qualified electors alike; when every voter has the same right as any other voter; when each voter under the law has the right to cast his ballot and have it honestly counted; when the regulation of the right to exercise the franchise does not deny the franchise itself, ... and when no constitutional right of the qualified elector is subverted or denied him.

*Shankey v. Staisey,* 436 Pa. 65, 69, 257 A.2d 897, 898 (1969), *cert. denied,* 396 U.S. 1038, 90 S.Ct. 684, 24 L.Ed.2d 682 (1970) (quoting *Winston v. Moore,* 244 Pa. 447, 457, 91 A. 520, 523 (1914); 25 Am.Jur.2d Elections § 150 (1966)). We are satisfied that Ordinance 2389 in no way prevents the electoral process in the City of Bethlehem from being congruent with our definition of "free and equal" under the Pennsylvania Constitution.

In *Shankey, supra,* where a provision of the Election Code (Act of 1937, June 3, P.L. 1333, art. XIV, § 1405, *as amended* 25 P.S. § 3155 (1963)) required indicia of public support before placement on the ballot, this Court held that such qualifying requirements are "reasonable" classifications. Here, the limitation placed on an incumbent mayor by Ordinance 2389 requiring that he serve two elected terms is well within the parameters of our definition of reasonableness since Ordinance 2389 neither "denies the

interpret section 303(1) as mandating unrestricted reelection terms by implication.

8. § 5. **Elections.**
    Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage.
    PA. CONST. art. 1, § 5 (1969).

franchise" to the electors nor dilutes the vote of any segment of the constituency.

The second issue, in the instant case, is whether a third class municipality operating under Mayor-Council Plan A of the Charter Law has authority to promulgate an ordinance limiting the number of times a municipal officer can stand for reelection. Marcincin contends that the Pennsylvania Legislature, not the municipality, controls the requirements and qualifications for city officers and that the Pennsylvania Constitution has conferred on the Legislature the power to attach tenure to municipal offices making them of limited or indefinite duration. The City, however, argues that the Legislature has conferred a broad grant of authority to third class municipalities under sections 303 and 304 of the Charter Law.

■ Under section 303(1), *supra*, the Legislature does empower the Council to administer local affairs. The power of the Council to limit incumbent municipal officers, including mayors to one term of reelection, as in the case at bar, is well within the scope of authority granted by the Legislature through section 303(1). Further, section 304 (53 P.S. § 41304, Supp.1986) provides "[a] general grant of municipal power ... intended to confer the greatest power of local self-government consistent with the Constitution of the State." [9] Moreover, section 304 also provides that "[a]ll grants of municipal power to cities governed by an optional plan under this act, whether in the form of specific enumer-

9. § 41304
   The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State. Any specific enumeration of municipal powers contained in this act or in any other law shall not be construed in any way to limit the general description of power contained in this article, and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article. All grants of municipal power to cities governed by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the city. 1957, July 15, P.L. 901, § 304.

ation or general terms, shall be liberally construed in favor of the city."

The comprehensive grant of authority under section 304 concerned this Court in *Herriman v. Carducci*, 475 Pa. 359, 380 A.2d 761 (1977) where an action in *quo warranto* was brought by one appointed to replace another as a member of a municipal authority. This Court stated that "[n]othing in the Optional Third Class City Charter Law, which gave third class cities the ability to organize and regulate their own internal affairs, empowers a city council to circumvent this statutory scheme by investing itself with powers denied to it by the Urban Redevelopment Law." 380 A.2d 761, 764 (1977). By contrast, we are satisfied that here the municipality exercised only that authority conceded to it pursuant to the above-mentioned provisions of the Charter Law.

Section 305 (Act of 1957, July 15, P.L. 901, § 305, *as amended*, 53 P.S. § 41305 (Supp.1986)) provides in pertinent part:

§ 41305. **Pension or retirement rights; terms of office; extraterritorial powers; proprietary or private business; powers granted by** *legislature*

The charter of any city adopted in accordance with this act shall not give any power or authority to diminish any rights or privileges of any present city employe in his pension or retirement system. Terms of office of a mayor, treasurer, controller or members of council elected to or holding office prior to adoption of a charter shall not be terminated prior to the time for which elected. No city shall exercise any powers or authority beyond the city limits except such as are conferred by an act of the General Assembly, and no city shall engage in any proprietary or private business except as authorized by the General Assembly. Notwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to or in limitation or enlargement of powers granted to the city by acts of the General Assembly which are:

(1) Applicable to a class or classes of cities ...

. . . .

(2) Applicable in every part of the Commonwealth.

(3) Applicable to all the cities of the Commonwealth.

1957, July 15, P.L. 901, § 305, *as amended,* 53 P.S. § 41305 (Supp.1986).

We read section 305 in *Herriman, supra,* as a limitation on the broad authority of section 303. Under section 305 we noted that "... no city shall exercise powers contrary to acts of the General Assembly if such acts are 'applicable to *all the cities* of the Commonwealth.'" 475 Pa. at 363–364, 380 A.2d at 764, 53 P.S. § 41305(3) (Supp.1986) (emphasis added).

In *Greenberg v. Bradford,* 432 Pa. 611, 248 A.2d 51 (1968) this Court stated that the restriction on authority extended under section 305 did not apply because in those cases the act overridden was applied exclusively to third class cities and not to all cities. Here, however, Ordinance 2389 does not override section 701 nor does it apply to all cities. As we stated previously, the reelection language in section 701 can only be interpreted as ensuring a right of reelection, not a continuum.

Promulgation of Ordinance 2389 by the Council is within the scope of authority under the broad grant of power provided by section 304, *supra,* and the enabling section 303(1). By limiting a mayor to two consecutive terms pursuant to Ordinance 2389, the Council has followed a fair and well-established constraint on the qualification for elective office. Such traditional limitation extends to the highest office in the United States. An incumbent president of the United States is limited to two terms pursuant to the twenty-second amendment to the United States Constitution, *supra,* which provides, *inter alia,* that "[n]o person shall be elected to the office of the President more than twice...." Philadelphia, the largest city in the State of Pennsylvania, in accord with its Home Rule Charter Law (351 Pa.Code, § 9.9–100 *et seq.*), has also limited the mayoralty to two terms of office, § 3.3–400, *supra.*

Sections 402 (53 P.S. § 41402, Supp.1986) [10] and 403 of the Charter Law, *supra,* (setting forth the officers, the manner of their election and establishing a four-year term of office) are read by Marcincin as indicative of legislative limitation on the ability of a mayor of a third class municipality to seek reelection for an unlimited number of four-year terms of office. There is no reason, however, to construe the statutory language of 402 and 403 as awarding an incumbent mayor unlimited opportunities of reelection. Nor is there reason to interpret those sections of the Charter Law as anything more than a mere recitation of municipal offices, election procedure and term of office. To read the aforementioned sections of the Code and the Charter Law otherwise is to ignore the plain meaning rule of statutory construction which provides that statutes should be read according to the plain meaning of their words. 1 Pa.C.S.A. § 1903(a) (Supp.1986); *Commonwealth v. Stanley,* 498 Pa. 326, 328, 446 A.2d 583 (1982); *Commonwealth v. Mumma,* 489 Pa. 547, 414 A.2d 1026 (1980).

■ This Court has recognized the power of self-government conveyed to third class municipalities by the Charter Law. *See Greenberg v. Bradford,* 432 Pa. 611, 248 A.2d 51 (1968). We will not disturb a reasonable expression of a municipal council's discretionary power (*Borough of New Hope v. Postal Telegraph Cable Co.,* 202 Pa. 532, 52 A. 127 (1902), reversed on other grounds; *Postal Telegraph Cable Co. v. Borough of New Hope,* 192 U.S. 55, 24 S.Ct. 204, 48 L.Ed. 338 (1904); *City of Philadelphia v. Brabender,* 201 Pa. 574, 51 A. 374 (1902); *Larrecq v. Van Orden,* 21 Pa. Cmwlth. 623, 346 A.2d 922 (1975); *Sherman v. Haddington Leadership Organization, Inc.,* 8 Pa.Cmwlth. 309, 302 A.2d 919 (1973)), unless there is an abuse of power detrimental to

10. § 41402. **Governing personnel**
　　Each city hereunder shall be governed by an elected council, an elected mayor, an elected treasurer and an elected controller and by such other officers and employes as may be duly appointed pursuant to this article, general law or ordinance.
　　1957, July 15, P.L. 901, § 402, *as amended,* 1959, Nov. 30, P.L. 1618, No. 593, § 1.

the citizenry. *Oliver v. City of Clairton*, 374 Pa. 333, 98 A.2d 47 (1953).

■ Where an ordinance conflicts with a statute, the will of the municipality as expressed through an ordinance will be respected unless the conflict between the statute and the ordinance is irreconcilable. *United Tavern Owners of Philadelphia v. Philadelphia School District*, 441 Pa. 274, 272 A.2d 868 (1971); *Harris-Walsh, Inc. v. Dickson City Borough*, 420 Pa. 259, 216 A.2d 329 (1966); *Retail Master Bakers Assn. of W. Pa. v. Allegheny County*, 400 Pa. 1, 161 A.2d 36 (1960); *City of Philadelphia v. Middleton*, 89 Pa.Cmwlth. 362, 492 A.2d 763 (1985). That is not the situation in the instant case, however. Power to promulgate Ordinance 2389 was properly delegated to the Council of the City of Bethlehem by the Legislature under Charter Law which was validly chosen by the electors of the City of Bethlehem as its operative form of government.

■ We are not here faced with a situation where a majority of the members of a city council have attempted to frustrate the wishes of a majority of the electorate of the city. The ordinance in question was passed prior to Marcincin's election to the office of mayor. His administration was in office for eight years before the applicability of this ordinance was called into question. Under the Third Class City Code, the electorate has the right to challenge an ordinance by referendum if the ordinance does not reflect the will of the electorate.[11] 53 P.S. § 36050. Such was not the case, however, with reference to Ordinance 2389. 53 P.S. § 36050; § 36051. We therefore cannot now conclude that the public demonstration for support of the incumbent administration must be interpreted as a repudiation of Ordinance 2389.

11. The Legislative power of this governmental unit is vested in the city council (53 P.S. § 36002) subject to the mayor's power of veto. 53 P.S. § 41413(a) (Supp.1986). The public, however, can express a contrary view through the referendum mechanism. *See* 53 P.S. § 36050; § 36051.

■ Although this Court has been asked to invalidate Ordinance 2389 by appellee, we cannot do so for the aforementioned reasons and because passage of Ordinance 2389 by the Council was a valid exercise of municipal authority pursuant to the Charter Law. Moreover, an ordinance is invalid only when it violates without question an organic law of the state. *Bilbar Construction Company v. Easttown Township Board of Adjustment*, 393 Pa. 62, 70, 141 A.2d 851, 856 (1958); *Borough of Tarentum v. Sadecky*, 16 Pa.Cmwlth. 163, 166, 329 A.2d 328, 329 (1974).

Accordingly, the Order of the Northampton County Court of Common Pleas is reversed and count II of the complaint is reinstated. The matter is remanded for further proceedings consistent with this opinion.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent and in support thereof cite the opinion in this case of the Court of Common Pleas of Northampton County, No. 1985–C–345, authored by the Honorable Richard D. Grifo.