# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mathew Grubel, Eric Tomlinson,   :
Frances Byers, Carol M. Coccagna,   :
and the class they represent,   :
                     Appellants   :
  :
             v.   :  No. 1307 C.D. 2014
  :  Argued: May 4, 2015
City of Philadelphia and County   :
Board of Elections   :


BEFORE:     HONORABLE BERNARD L. McGINLEY, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**                   **FILED: November 30, 2015**

      Appellants are two judges of election and two minority inspectors of election for the Board of Elections (Board)[1] of the City of Philadelphia (City); and the certified class consisting of judges of elections, majority inspectors, minority inspectors, clerks, machine operators, overseers and bilingual interpreters who have served in the elections since November 8, 2005 or will serve in the future elections. Appellants challenge the orders of the Court of Common Pleas of Philadelphia County (trial court) granting the motion of the City and the Board (collectively, the City) for summary judgment, denying Appellants' motion for summary judgment, and dismissing Appellants' action with prejudice.

---

    [1] In Philadelphia, the City Commissioners serve as the County Board of Elections. The City Commissioners are a three member bipartisan board of elected officials in charge of elections and voter registration for the City of Philadelphia.

Appellants commenced the instant action against the City in November 2008.  In the amended complaint, Appellants alleged that the City failed to pay the minimum hourly wage of at least 150% of the federal minimum wage in violation of Title 17 of the Philadelphia Code ("Contracts and Procurement"), Section 17-1305 of Chapter 17-1300 ("Philadelphia 21st Century Minimum Wage and Benefits Standard") (Minimum Wage Ordinance), enacted on May 26, 2005. Appellants sought an award of back pay in the amount of the difference between the minimum wage required by the Minimum Wage Ordinance and the compensation they already received.  They also asked the court to certify the action as a class action.

> Section 17-1305 of the Minimum Wage Ordinance provides:
>
> Except as otherwise provided in this Chapter, an Employer subject to this Chapter shall provide its *covered Employees* the following minimum compensation:
>
> (1) *Minimum Wage Standard.*  The Employer shall pay each Employee an hourly wage, excluding benefits, equal to at least the higher of:
>
> (a)  150 % of the federal minimum wage or
>
> (b)  $12 multiplied by the CPI [Consumer Price Index] Multiplier.  [Emphasis added.]

Based on the current federal minimum hourly wage of $7.25, the minimum hourly wage required by the Minimum Wage Ordinance is $10.88.  Section 17-1302(4) of the Minimum Wage Ordinance defines a covered "Employee" as:

> Any person who performs work for *a covered Employer arising directly out of a Service Contract*, *City financial aid, the grant of a City lease, concession or franchise, or a funding agreement with a public agency*, on a full-time, part-time, temporary, or seasonal basis, including employees, temporary workers, contracted workers, contingent workers, and persons made available to work

> through the services of a temporary services, staffing or employment agency or similar entity. [Emphasis added.]

The term "Employer" is defined as "[t]hose persons with more than five (5) employees, except that no person shall be deemed an Employer until they receive a *new contract, lease, concession, franchise, or financial aid from the City*." Section 1302(5) (emphasis added). Employers subject to the minimum wage standards are (1) the City, including all of its agencies, departments and offices, (2) for-profit service contractors receiving a certain contract amount from the City, (3) non-profit service contractors receiving a certain amount from the City, (4) recipients of City leases, concessions, or franchises, or subcontractors or subrecipients, (5) City financial aid recipients and (6) public agencies receiving a certain amount from the City. Section 17-1303 of the Minimum Wage Ordinance. A "Service Contract" is "[a] contract given to an employer by the City for the furnishing of services to or for the City, except contracts where services are identical to the delivery of products, equipment or commodities." Section 1302(9) of the Minimum Wage Ordinance.

The City filed preliminary objections, arguing that applying the Minimum Wage Ordinance to the election workers would violate the uniformity clause of Article VII, Section 6 of the Pennsylvania Constitution, Pa. Const. art. VII, § 6, which provides that "[a]ll laws regulating the holding of elections … shall be uniform throughout the State," and that the Minimum Wage Ordinance is preempted by Section 412.2 of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended*, added by Section 6 of the Act of December 9, 2002, P.L. 1246, 25 P.S. § 2682.2. The City further argued that the election workers are not covered employees under the Minimum Wage Ordinance.

3

All primaries and elections must be conducted in each election district "by a district election board consisting of a judge of election, a majority inspector of election and a minority inspector of election, assisted by clerks and machine inspectors in certain cases." Section 401 of the Election Code, 25 P.S. § 2671. Judges and inspectors of election are elected to serve for a term of 4 years. *Id.* A clerk is appointed by the minority inspector. Section 1113(a) of the Election Code, 25 P.S. § 3013(a). A machine inspector is appointed by the county board of elections. Section 404 of the Election Code, 25 P.S. § 2674(a). Bilingual interpreters for non-English speaking voters are not Election Officers[2] under the Election Code but are recruited by the City to meet the federal requirements. Overseers of election are appointed by the court upon the petition of five or more registered electors as a reasonable precaution to secure the purity and fairness of any election. Section 415 of the Election Code, 25 P.S. § 2685.

Section 412.2 of the Election Code provides in relevant part:

(a) In all counties regardless of class, the compensation of judges of election, inspectors of election, clerks and machine operators shall be fixed by the county board of elections for each election in accordance with the following:

| Election Officers | Minimum Compensation | Maximum Compensation |
|---|---|---|
| Judges of election | $75 | $200 |
| Inspectors of election | $75 | $195 |
| Clerks and machine operators | $70 | $195 |

....

---

[2] Judges of election, inspectors of election, machine operators and clerks collectively will be referred to as "Election Officers."

4

> (c) The county board of elections may, in its discretion, establish different per diem rates within the minimum and maximum provided for in subsection (a) based on the number of votes cast for the following groups:
>> (1) 150 votes or fewer.
>> (2) 151 to 300 votes.
>> (3) 301 to 500 votes.
>> (4) 501 to 750 votes.
>> (5) 751 votes and over.
>> ….
>> (i) Compensation and other payments received by election officials pursuant to this section shall not be deemed income classified and categorized under section 303 of the act of March 4, 1971 (P.L. 6, No. 2), [72 P.S. § 7303,] known as "the Tax Reform Code of 1971."

25 P.S. § 2682.2. The City Commissioners, who oversee and administer the Board under the City Home Rule Charter, pay Election Officers and election workers on a per-diem basis, regardless of the hours they actually serve on an election day. The Commissioners pay $100 to judges of election and $95 to inspectors of election, clerks, and machine operators, all of which exceed the minimum compensation set forth in Section 412.2(a) of the Election Code. Bilingual interpreters receive $75 on an election day and an additional $20 if they attend a standard training session before the election day. They receive $30 if they attend an additional training.

The trial court dismissed Appellants' motion for class certification. On appeal, this Court vacated the trial court's order and remanded for further proceedings, stating that the trial court issued the order without a certification hearing or a supporting opinion. The trial court subsequently denied the City's motion to withdraw deemed admissions resulting from its failure to timely respond to Appellants' request for admission. The trial court also overruled the City's preliminary objections. Based on the parties' stipulation, the court certified the class, consisting of those who have served in the elections since November 8, 2005

and will serve in the future elections as a judge of election, a majority inspector, a minority inspector, a clerk, a machine operator, an overseer and a bilingual interpreter (collectively, election workers). The court denied Appellants' motion for partial summary judgment on the City's liability.

On May 13, 2013, the City Commissioners filed with the City Office of Labor Standards a request for a waiver of the minimum wage standards under Section 17-1304(9) of the Minimum Wage Ordinance, which provides that "[n]otwithstanding any other provision of this Section to the contrary, … the City reserves the right to waive the requirements of this Chapter upon a finding and determination that a waiver is in the best interests of the City." In requesting a waiver, the Commissioners stated that the election workers are paid on a per-election-day basis, not on an hourly basis, and that they are not employees covered by the Minimum Wage Ordinance. The Commissioners estimated that the additional cost of paying the election workers the minimum wage under the Minimum Wage Ordinance would be $984,000 per year. The Office of Labor Standards approved the waiver request.

Appellants thereafter filed a motion for summary judgment, invoking regulatory estoppel. They argued that the City changed its position on the applicability of the Minimum Wage Ordinance to the election workers by requesting a waiver of the minimum wage standards. The City also filed a motion for summary judgment. In separate orders, the trial court granted the City's motion for summary judgment, denied Appellants' motion for summary judgment, and dismissed Appellants' action with prejudice.

The trial court concluded that the Minimum Wage Ordinance is preempted by the Election Code. The court stated that the uniformity requirement

6

in Article 7, Section 6 of the Pennsylvania Constitution includes the manner of calculating compensation of the election workers and that there is an irreconcilable conflict between the Election Code and the Minimum Wage Ordinance regarding the election workers' compensation. The court further concluded that the election workers are not employees covered under the Minimum Wage Ordinance. It also rejected Appellants' regulatory estoppel claim. This appeal followed.

First, we will address the City's conflict preemption argument, which presents a pure question of law over which we exercise plenary review. *See Nutter v. Dougherty*, 938 A.2d 401, 412 n.20 (Pa. 2007). Municipalities "possess only such powers of government as are expressly granted to them and as are necessary to carry the same into effect." *City of Phila. v. Schweiker*, 858 A.2d 75, 84 (Pa. 2004). As a city of the first class pursuant to the First Class City Home Rule Act,[3] the City "may exercise all powers and authority of local self-government and shall have complete powers of legislation and administration in relation to its municipal functions." Section 17 of the First Class City Home Rule Act, 53 P.S. § 13131. Under the concept of home rule, the ability of a locality to exercise municipal functions is limited only by its home rule charter, the Pennsylvania Constitution, and enactments of the General Assembly. *Schweiker,* 858 A.2d at 84; Section 2961 of the Home Rule and Optional Plan Government Act, 53 Pa. C.S. § 2961. The doctrine of conflict preemption provides that a local ordinance that contradicts, contravenes, or is inconsistent with a state statute is invalid. *Holt's Cigar Co. v. City of Phila.*, 10 A.3d 902, 907 (Pa. 2011). Conflict preemption is applicable when the conflict between the statute and the ordinance is

---

[3] Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. §§ 13101-13116, 13131, 13133, 13155-13157.

7

irreconcilable. *City Council of the City of Bethlehem v. Marcincin*, 515 A.2d 1320, 1326 (Pa. 1986). Further, the ordinance in question must be considered in light of the objectives of the General Assembly and the purposes of the relevant statute. *Holt's*, 10 A.3d at 907. A local ordinance may not stand as an obstacle to the execution of the full purposes and objectives of the General Assembly. *Id*.

Article VII, Section 6 of the Pennsylvania Constitution states that "all laws regulating the holding of elections…shall be uniform." Section 412.2 of the Election Code specifically provides that judges of election, inspectors of election, machine operators and clerks shall be paid a per diem. The amount of the per diem may vary by county, but the per diem must fall within the range specified by Section 412.2(a) of the Election Code. Section 17-305(1) of the Minimum Wage Ordinance states that an employer must pay an employee an hourly wage. Black's Law Dictionary 1251 (9th ed. 2009) defines "per diem" as "a daily fee." "Minimum wage" is defined as "the lowest permissible hourly rate of compensation for labor…." *Id*. at 1716. Thus, an hourly wage and a per diem are two different methods of compensation. The General Assembly has determined that Election Officers in the Commonwealth shall be paid by a uniform method, the per diem.[4] By electing to specify the per diem method of compensation the General Assembly excluded all other methods of compensation. *Cali v. Phila.*, 177 A.2d 824, 832-33 (Pa. 1962) (under the principle of *expressio unius est*

---

[4] In *Philadelphia v. Commonwealth*, 119 A. 723 (Pa. 1923), the City sought reimbursement from the Commonwealth for primary expenses, including per diems for Election Officers, incurred on behalf of the Commonwealth during 1911-1913. Common pleas awarded the statutory prescribed per diem fees plus additional sums. The Supreme Court held that the Commonwealth was required to reimburse the City for the statutorily prescribed per diem fees, but was not required to pay any additional sums because the "city councils could not increase the compensation of election officers, without an enabling act of the assembly." 119 A. at 724.

8

*exclusio alterius*, the mention of a specific matter in a statute implies the exclusion of others not mentioned). Payment of Philadelphia Election Officers by hourly wage as directed by Section 17-305(1) of the Minimum Wage Ordinance, is inconsistent and irreconcilable with the Election Code. Accordingly, the Election Code preempts the Minimum Wage Ordinance with regard to the compensation of the Election Officers.[5]

We now turn to consideration of overseers and interpreters. The City argues that the Election Code preempts the application of the Minimum Wage Ordinance to overseers because overseers are appointed by the court of common pleas and, as an "arm of the court" their compensation is at the discretion of the court. The City asserts that application of the Minimum Wage Ordinance would interfere with the court of common pleas' discretion thereby constituting an irreconcilable conflict with the Election Code.

While overseers are authorized by Section 415 of the Election Code, 25 P.S. § 2685, compensation for overseers is not specified in the Election Code. The Court was unable to locate any case law discussing the compensation of overseers or any previous enactments providing for the compensation of overseers. Given the Election Code's specific directives regarding the compensation of other election workers,[6] the Election Code's silence regarding the compensation of

---

[5] We also note that, as elected officials, compensation for judges and inspectors of election is subject to Article III, Section 27 of the Pennsylvania Constitution, which provides that "[n]o law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." Pa. Const. art. III, § 27.

[6] For example, Election Officers shall be paid a per diem, watchers shall be paid a per diem not in excess of $120 by their respective political parties, custodians of voting machines shall be paid not less than $5 per day, and court-appointed auditors shall be paid a reasonable sum per day. Sections 412.2, 417, 1111, and 1636 of the Election Code, 25 P.S. §§ 2682.2, 2687, 3011 and 3256.

9

overseers leads this Court to conclude that the General Assembly either intended that overseers not receive compensation[7] or that overseer compensation is within common pleas' province. In either instance, the application of the Minimum Wage Ordinance is not appropriate.

Further, overseers do not fall within the Minimum Wage Ordinance's definition of "employee." Section 17-1302(4) defines "employee" as "[a]ny person who performs work for *a covered Employer arising directly out of a Service Contract, City financial aid, the grant of a City lease, concession or franchise, or a funding agreement with a public agency*." (Emphasis added). Overseers do not perform work pursuant to any of the methods listed in Section 17-1302(4). Rather, overseers are appointed and serve at the discretion of the court of common pleas.

The Election Code does not mandate that a municipality provide language interpretation services. Section 1281 of the Election Code, 25 P.S. § 3058, provides that a voter who is unable to read the ballot "shall be permitted by the judge of election to select a person of the elector's choice to enter the voting compartment or voting machine booth with him to assist him in voting." However, as a result of litigation brought by the United States Department of Justice pursuant the Voting Rights Act of 1965, the City is required to supply non-English speakers with voting assistance in the form of bilingual interpreters and bilingual election materials. 52 U.S.C. § 10503. Bilingual interpreters are recruited by the City and community agencies. Affidavit of Frederick L. Voight at 2, Reproduced Record (R.R.) at 78. The City also contracts with a telephone language interpretation

---

[7] "The Citizen's Guide to Pennsylvania Local Government" (10th ed. 2010) issued by the Pennsylvania Department of Community & Economic Development, Governor's Center for Local Government Services, states that overseers serve without compensation. *Id*. at 10.

10

service to provide telephonic interpretation services in numerous languages. On Election Day, bilingual interpreters work under the direction of the judge of elections. *Id*.

The Court concludes that because the Election Code does not require the presence of bilingual interpreters at the polls, compensation of such persons is not preempted by the Election Code. Additionally, from the record before us, it appears that interpreters could be individuals acting as independent contractors, individual business owners, sole proprietors or employees of a translation service. Accordingly, we are unable to determine whether any or all of the interpreters fall within definitions of employee or employer found in Sections 17-1302(4) or 17-1302(5) of the Minimum Wage Ordinance.[8]

We will now consider whether judicial estoppel bars the Office of Labor Standards grant of a waiver. Appellants assert that the Office of Labor Standards improperly granted a waiver with regard to Election Officers and election workers because the doctrine of judicial estoppel prohibits the City from espousing inconsistent positions. Appellants argue that by requesting a waiver the City is arguing inconsistently that Election Officers and election workers are not covered employees for purposes of this litigation, but are covered employees for purposes of obtaining a waiver.

"[T]he purpose of the doctrine of judicial estoppel is to uphold the integrity of the courts by preventing parties from abusing the judicial process by changing positions as the moment requires." *Gross v. City of Pittsburgh*, 686 A.2d

---

[8] The Court notes that since interpreters are not engaged pursuant to the Election Code any fees or wages they earn would not be exempt from taxation under Section 412.2(c)(i) of the Election Code.

11

864, 867 (Pa. Cmwlth. 1996). A party may be judicially estopped when (1) the party asserts a position inconsistent with his or her assertion in a previous action; and (2) his or her contention in the previous action was "successfully maintained." *Trowbridge v. The Scranton Artificial Limb Co.*, 747 A.2d 862, 864 (Pa. 2000). *See also Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189 (Pa. 2001) (discussing judicial estoppel in a regulatory setting).

We reject Appellants' assertion that the City is judicially estopped from requesting a waiver. At all times, the City has maintained that Election officers and election workers are not covered employees and their per diem compensation is set by the Election Code. In its request for a waiver, the City stated:

> The Commissioners have consistently believed and continue to believe that election workers, as defined above, are not "covered employees" as defined in the Ordinance, and are not subject to its minimum wage requirement. Accordingly, the City Commissioners Office compensates election workers on a "per election day" basis, rather than an hourly basis, and the compensation of the election workers is set based upon the Pennsylvania Election Code, 23 P.S. [§] 26822.
> * * * *
> [W]e do not seek to change the way we compensate these workers to pay them an hourly "wage," nor do we intend [to] relinquish the right and authority granted by the Election Code [ ] to the City Commissioners Office to fix the compensation of these workers.

R.R. at 186-87. Further, at the time the City requested the waiver, its contention had not been successfully maintained as the trial court would not grant summary judgment until nearly a year later. The City's request for a waiver covered all elections going forward from May 2013, while this litigation covers all elections

12

from November 8, 2005 going forward. The City's request for a waiver is akin to arguing alternate theories before a court or requesting alternate relief. By requesting the waiver, the City essentially was ensuring that, even if the trial court rejected its Election Code arguments, Election Officers and election workers would be exempt from the Minimum Wage Ordinance after May 2013.

We summarize our decision as follows. The Election Code preempts the Minimum Wage Ordinance with regard to the compensation of the Election Officers and, therefore, summary judgment in favor of the City is affirmed for these class members. We conclude that overseers are not covered employees as defined by the Minimum Wage Ordinance and summary judgment in favor of the City is affirmed as to the overseers. Finally, we conclude that although the Election Code does not preempt the Minimum Wage Ordinance with regard to bilingual interpreters, judicial estoppel does not bar the grant of waiver with regard to bilingual interpreters for elections held after May 21, 2013.

Summary judgment in favor of the City is reversed as to bilingual interpreters participating in elections between November 2005 and May of 2013 and this matter is remanded for further proceedings. Otherwise, the judgment of the court of common pleas is affirmed.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mathew Grubel, Eric Tomlinson,   :
Frances Byers, Carol M. Coccagna,   :
and the class they represent,   :
      Appellants   :
         :
     v.      :   No. 1307 C.D. 2014
         :
City of Philadelphia and County   :
Board of Elections      :

## **O R D E R**

AND NOW, this 30th day of November, 2015, the orders of the Court of Common Pleas of Philadelphia County are hereby AFFIRMED in part and REVERSED in part. Summary judgment is AFFIRMED as to judges of election, inspectors of election, machine operators, clerks, and overseers. Summary judgment is REVERSED as to the claims of bilingual interpreters from November 8, 2005 through May 20, 2013 and this matter is REMANDED for further proceedings.

Jurisdiction relinquished.

          _____
          **BONNIE BRIGANCE LEADBETTER,**
          Judge