[J-7-2019] [MO: Baer, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| RUSSELL BERNER AND DONNA BERNER, KENDALL DOBBINS, NATHAN ROBERTS, ROBERTS REALTY, LLC, ROBERT D. CLARK AND ROBERT W. WEBBER | : : : : : : | No. 39 MAP 2018<br><br>Appeal from the Order of the Commonwealth Court at No. 448 CD 2017 dated January 4, 2018, Reversing the Order of the Columbia County Court of Common Pleas, Civil Division, at No. 2014-CV-684 dated March 7, 2017 |
| v. | : : : : : | |
| MONTOUR TOWNSHIP ZONING HEARING BOARD AND SCOTT SPONENBERG | : : : : : : | ARGUED: March 5, 2019 |
| APPEAL OF: SCOTT SPONENBERG | : | |

**DISSENTING OPINION**

**JUSTICE DOUGHERTY**                    **DECIDED: September 26, 2019**

Respectfully, I disagree with the majority's conclusion the Nutrient Management Act (NMA), 3 Pa.C.S. §§501-522, preempts Montour Township's zoning ordinance, which requires hog raising operations within the Township's delineated agricultural districts to submit legally binding assurances their manure will be managed without adverse impact upon adjacent properties. *See* Montour Township, General Codes, Ch. 27 (Zoning), §402(1)(E). In reaching its conclusion, the majority determines Scott Sponenberg's (Applicant's) proposed lower-intensity agricultural operation, consisting of 4,800 swine, is both excused from the requirements of the NMA by virtue of its size,[1] and, paradoxically,

---

[1] As explained in greater detail herein, I do not dispute the NMA places no obligations on Applicant, whose farm is not a concentrated animal operation (CAO) or voluntary

also immune from local regulation regarding the impacts of the farm's manure management activities on surrounding properties. *See* Majority Opinion at 18. The majority's construction of the NMA's preemption provision thereby effectively leaves the localized health and environmental impacts of the manure practices of such farms — which Applicant and his *amici* contend comprise the vast majority of farms across the Commonwealth — outside of any regulation. In my view, not only is this result untenable, but it is based upon a flawed statutory construction analysis that undermines this Court's jurisprudence with regard to preemption principles, and curtails long-established municipal authority to "make such additional regulations" in furtherance of state law as are reasonable and appropriate to the needs of the particular locality. *See Hoffman Mining Co. v. Zoning Hearing Bd. of Adams Twp.,* 32 A.3d 587, 595 (Pa. 2011), *quoting Mars Emergency Med. Servs., Inc. v. Twp. of Adams, Cambria Cty.*, 740 A.2d 193, 195 (Pa. 1999) (citations omitted). Accordingly, I dissent.

As an initial matter, I agree with the majority to the degree it determines local regulation of nutrient management is prohibited "only to the extent that it is more stringent than, inconsistent with, or in conflict with the [NMA] or its regulations." *See* Majority Opinion at 15. However, I depart from the majority with respect to its construction analysis and resulting application of Section 519, which provides the preemptive effect of the NMA. As a precursor to applying the principles of statutory construction, I note Section 519 of the NMA is unquestionably ambiguous. In interpreting this provision, the Commonwealth Court has observed, "[t]he [NMA's] preemption language is as perplexing as it is verbose[.]" *Berner v. Montour Twp. Zoning Hearing Bd.*, 176 A.3d 1058, 1076 (Pa. Cmwlth. 2018), *quoting Com., Office of Atty. Gen. ex rel. Corbett v. Locust Twp.*, 49 A.3d

---

agricultural operation (VAO), or otherwise required to implement a nutrient management plan (NMP).

502, 506-07 (Pa. Cmwlth. 2012). Both Applicant and Objectors rely upon this characterization. *See* Appellee's Brief at 11, *quoting Locust Twp.* at 506-07; *see also* Appellant's Brief at 32 ("[T]he varied preemption language used by the General Assembly in §519 is 'perplexing,' and when viewed as a whole, unclear. . . . [T]he intent of the statute is not clear and free from all ambiguity based on its text[.]"); *but cf.* Appellant's Brief at 26 ("The General Assembly unambiguously preempted the field of nutrient management to the exclusion of all local regulation.").

Read in isolation, NMA subsection 519(a) appears to indicate the General Assembly intended to prohibit all local regulation of nutrient management. Majority Opinion at 13-14, *quoting* 3 Pa.C.S. §519(a) ("This chapter and its provisions are of Statewide concern and occupy the whole field of regulation regarding nutrient management and odor management, to the exclusion of all local regulations."). However, the preemption provision goes on to undermine its all-encompassing, exclusionary statement by commanding in subsection (b), "no [local regulation] may prohibit or in any way regulate [nutrient management] **if the . . . regulation is in conflict with this chapter** [and its regulations]" — a statement otherwise unnecessary if **all** local regulation of nutrient management is excluded pursuant to Subsection 519(a). 3 Pa.C.S. §519(b) (emphasis added). Section 519 further contradicts itself with the following proviso in subsection (d): "**nothing in [the NMA] shall prevent** [a locality] from adopting and enforcing ordinances or regulations which are consistent with and no more stringent than the requirements of this chapter [and its regulations or guidelines]." 3 Pa.C.S. §519(d) (emphasis added). Consequently, the preemption clause is facially contradictory and ambiguous, clouding the General Assembly's intent.

Despite its effort to construe these subsections together, *see* 1 Pa.C.S. §1921, the majority's construction still excludes subsection 519(a) from the equation, determining the

General Assembly did not intend to preclude all local regulation in the field of nutrient management. *See* Majority Opinion at 14-15. In my alternate view, subsection 519(a) is wholly irreconcilable with the subsequent provisions of Section 519. In such a case, our analysis is guided by other principles of statutory construction. Specifically, where a conflict between two provisions in a statute is irreconcilable, particular provisions prevail over the general ones. *See* 1 Pa.C.S. §1933. Additionally, clauses last in order of position shall prevail. *See* 1 Pa.C.S. §1934. Thus, the provisions of Section 519 which operate to guide the interpretation of this matter are subsections (b) and (d).[2] Reading those provisions together, if a local regulation of nutrient management is more stringent than, or inconsistent with, or in conflict with the provisions of the NMA (or its regulations or guidelines), then the local government may not prohibit or regulate practices related to nutrient management. Stated otherwise, the local government **may** prohibit or regulate practices related to nutrient management if its regulation is not more stringent than, inconsistent with, or in conflict with the provisions of the NMA.

However, the inquiry does not end at reaching this construction of Section 519, and my divergence from the majority stems from the remainder of its analysis. Initially, the majority determines the General Assembly did not, by enactment of Section 519, intend to preclude **all** local regulation in the field of nutrient management, but, rather, intended to prohibit such local regulation only if it "is more stringent than, inconsistent with, or in conflict with" the NMA or its regulations. Majority Opinion at 14-15. However, the majority then inconsistently proceeds to prohibit Montour Township's local regulation because it "clearly regulate[s] nutrient management" (which, the majority previously determined, is not a reason to preclude a local regulation) and imposes obligations "in addition to" the obligations set forth in the NMA and its regulations. *Id.* at 15. But, under

---

[2] Subsection 519(c) is not implicated or addressed in this case. *See* 3 Pa.C.S. §519(c).

the majority's construction of the preemption provisions, "additional" requirements **may** be adopted if they are consistent with the NMA. Accordingly, an ordinance's imposition of obligations "in addition to" those described within the NMA is not one of the delineated, express preemptive criteria contained in Section 519; neither is it, therefore, a valid basis for preemption. Furthermore, it is difficult to imagine the import of a local regulation that does not impose some "additional" local obligation, within any statutory framework.

Moreover, it does not necessarily follow, as the majority reasons, that the Ordinance's adverse impact requirement is in conflict with the NMA simply by nature of being "additional" to the minimum standards for manure storage facilities described in Section 83.351 of the NMA regulations. *See id.* at 15, *citing* 25 Pa. Code §83.351(a) ("The minimum standards contained in this section apply to new manure storage facilities and the expansion of existing manure storage facilities, as part of a plan developed for an [Nutrient Management Plan (NMP)] operation."). Notably, because Section 83.351 applies only to NMP operations, it does not apply to non-NMP, lower-intensity agricultural operations, such as Applicant's. Thus, absent local regulation, Applicant's 4,800 swine facility operates without even minimum standards for its manure storage. As noted by the Commonwealth Court, where there are **no** applicable state-level standards for manure storage, there can be **no conflict** with additional obligations imposed by local manure storage regulation. *See Berner*, 176 A.3d at 1078-79. This circumstance, however, underscores the wider problem posed by broadly applying Section 519's preemption criteria: where the NMA and its regulations contain **no** provisions regarding a type of farm, **no** ordinance would be in conflict with the NMA (and thus **is not** preempted), but also, **any** plausible ordinance at all would be more stringent by requiring more than nothing (and thus **is** preempted). In my view, this problem is a complex one, and to avoid potentially unduly severe restrictions on local regulation, the Section 519 preemption

analysis requires more than a superficial determination that requirements additional to those imposed by the NMA regulations are preempted.

As previously noted, the NMA does not preempt the entire field of nutrient management, *see* Majority Opinion at 14-15; thus, a conflict preemption analysis is warranted. "[C]onflict preemption require[s] an analysis of whether preemption is implied in or implicit from the text of the whole statute, which may or may not include an express preemption clause." *Hoffman Mining*, 32 A.3d at 594, *citing Cellucci v. Gen. Motors Corp.*, 706 A.2d 806, 809 (Pa. 1998).

*Hoffman Mining* is instructive regarding the long-standing principles, parameters, and wealth of authority supporting a conflict preemption analysis. "Under the doctrine of conflict preemption, a local ordinance that **irreconcilably** conflicts with a state statute is invalid." *Id.* at 602 (emphasis added). The analysis requires a determination not only that a conflict exists, but whether such conflict is irreconcilable. *See id.* at 603, *quoting City Council of the City of Bethlehem v. Marcincin*, 515 A.2d 1320, 1326 (Pa. 1986) ("Where an ordinance conflicts with a statute, the will of the municipality as expressed through **an ordinance will be respected unless the conflict between the statute and the ordinance is irreconcilable.**") (emphasis added). Under this assessment, a conflict is irreconcilable, and thus the local regulation is invalid, if either of two conditions exist: (1) if simultaneous compliance with both the local ordinance and the state statute is impossible, *i.e.*, if an actor is placed in a position of having to decide which enactment to follow, or, (2) if the local ordinance "stands 'as an obstacle to the execution of the full purposes and objectives' of a statutory enactment of the General Assembly." *Id.* at 594-95, 602-03, *citing Council 13, Am. Fed'n of State, Cty. & Mun. Employees, AFL-CIO ex rel. Fillman v. Rendell*, 986 A.2d 63, 81-82 (Pa. 2009) (irreconcilable conflict existed between federal law and Pennsylvania Constitution as former required timely payment of

wages to state employees but latter barred expenditures from state treasury during budget impasse), *Marcincin*, 515 A.2d at 1323, 1326 (ordinance limiting mayor to two consecutive terms not irreconcilable with a statute providing mayor shall be eligible for reelection), and *Fross v. Cty. of Allegheny*, 20 A.3d 1193, 1203-1207 (Pa. 2011) (ordinance restricting where convicted sex offenders could reside was impediment to objectives of Sentencing and Parole Codes setting forth policy of rehabilitation, reintegration, and diversion from prison of offenders based on individually-tailored assessments); *quoting Fross* at 1203 n.12. Additionally, the *Hoffman Mining* Court acknowledged local authorities' responsibility to enact zoning ordinances for the "health, safety or general welfare of the community, giving 'consideration to the character of the municipality, the needs of the citizens and the suitabilities and special nature of particular parts of the municipality,'" *id.* at 603, 605, *quoting* 53 P.S. §10603(a), and observed "the General Assembly must **clearly** evidence its intent to preempt. . . . [s]uch clarity is mandated because of the severity of the consequences of a determination of preemption[,]" that is, the complete preclusion of local legislation in that area. *Id.* at 593 (emphasis added).

With regard to the matter *sub judice*, the General Assembly has not clearly established what it intended to preempt by enacting Section 519. Further, the consequence of preempting the Ordinance's adverse impact requirement, and any local regulations enacting additional manure storage requirements affecting non-NMP operations, is considerable: in the absence of state law to accomplish the task,[3]

---

[3] I note the Clean Streams Law, 35 P.S. §§691.1-691.1001, does subject lower-intensity agricultural operations to some regulation with regard to manure pollution control, for which violations a farm "may" be required to develop and implement an NMP. 3 Pa.C.S. §506(j). However, the extent to which the Clean Streams Law regulates Applicant's manure management activities appears, based on this record, limited in two respects. First, though he must develop and keep on file a Manure Management Plan, such a plan

municipalities are without recourse to mitigate anticipated local health and safety impacts of manure storage operations on the lands immediately surrounding approximately 91 percent of the Commonwealth's animal-raising farms.[4]

Turning to application of the principles of conflict preemption, the first inquiry is whether Applicant's compliance with both laws is possible. As the majority observes, the NMA imposes nutrient management requirements on NMP operations only — those being CAOs, VAOs, and operations otherwise required to implement NMPs as part of a Clean Streams Law compliance plan; it imposes no requirements on non-NMP operations, but gives them the option to comply. Majority Opinion at 16, *citing* 3 Pa.C.S. §506 and 25 Pa. Code §§83.201, 83.261. Consequently, as Applicant is a non-NMP operation, the NMA requires nothing of his farm. No conflict is apparent in this regard, as Applicant's compliance with the Ordinance will not violate the NMA.

The remaining inquiry is whether the adverse impact requirement of the zoning ordinance stands as an obstacle to the execution of the purposes of the NMA. Section 502 of the NMA, titled "Declaration of legislative purpose," provides, in pertinent part,

---

is not a document reviewed or approved by any authority, but a workbook document which can be prepared by the farmer or by a person certified to write such plans. *Berner*, 176 A.3d at 1078 (quoting testimony of state-certified nutrient management specialist Todd Rush, who prepared Applicant's Manure Management Plan). Applicant does not suggest his Manure Management Plan in any way provides assurances against adverse impacts to his surrounding properties. *Id.* at 1072. Second, on review of the Clean Streams Law regulation Applicant asserts governs his farm, it is questionable whether he is in fact subject to any of its enforcement provisions, which apply to illegal pollutant discharges by an operation "that meets the definition of . . . [a concentrated animal feeding operation (CAFO).]" *See* 25 Pa. Code §91.36(c)(2). It is undisputed Applicant's farm does not meet the definition of a CAFO. *Berner*, 176 A.3d at 1079 ("[Applicant] is not a CAO or a CAFO.").

[4] In its brief supporting Applicant, the Commonwealth relates, "[o]f the 59,000 farms in the Commonwealth, approximately 23,000 raise animals. The vast majority of those farms — approximately 91% — are like [Applicant's], too small to necessitate a nutrient management plan under the NMA." Commonwealth's Amicus Curiae Brief at 17.

"[t]he purposes of this chapter are as follows: [*inter alia*] (1) [t]o establish criteria, nutrient management planning requirements and an implementation schedule for the application of nutrient management measures **on certain agricultural operations** which generate or utilize animal manure."[5] 3 Pa.C.S. §502(1)(emphasis added). As explained above, those "certain agricultural operations" regulated by the chapter include, expressly and only, NMP operations. Accordingly, local regulation impacting non-NMP operations presents **no** obstacle to the execution of the purposes of the NMA as articulated by the General Assembly.

Furthermore, although, as noted by the majority, the NMA's inclusion of voluntary provisions and financial assistance for lower-intensity operations to develop NMPs may reflect a legislative purpose to spare smaller farms from the onerous requirements of implementing an NMP, *see* Majority Opinion at 16-17, the NMA's silence with regard to non-NMP operations does **not** reflect a legislative intent to spare smaller farms from **all** nutrient management regulation. In my view, the Ordinance's adverse impact requirement does not pose an obstacle to this purpose. As a prerequisite to receiving a special exception for Applicant's intended hog-raising use, the contested portion of the Ordinance requires Applicant to provide "legally binding assurances with performance guarantees" demonstrating the operation's manure and wastewater management facilities "will be conducted without adverse impact upon adjacent properties." *Id.* at 5; Montour Township, General Codes, Ch. 27 (Zoning), §402(1)(E). Applicant has made no attempt to submit such assurances, and, consequently, has not demonstrated the Ordinance's adverse impact requirement imposes obligations as burdensome as NMP implementation. Notably, the Commonwealth Court suggests the adverse impact requirement would be

---

[5] The additional four purposes enumerated in NMA Section 502 have no bearing on the circumstances of this case. *See* 3 Pa.C.S. §502(2)-(5).

met by simply providing the performance criteria or warranty information from Applicant's manure tank and equipment suppliers, and any proposed construction or operations contracts and workmanship warranties. *Berner*, 176 A.3d at 1072-73. These minimal requirements suggested by the Commonwealth Court for compliance with the Ordinance appear to be much less burdensome than the NMP requirements imposed by the NMA. Thus, based on the record, or lack thereof, before the Court, I disagree with the majority's elevation of the Ordinance's requirements to "standards more burdensome" than NMP requirements. *See* Majority Opinion at 17, 18 n.17.

For the foregoing reasons, I discern no irreconcilable conflict between the Ordinance's adverse impact requirement and the NMA. Thus, I would conclude the NMA does not preempt Montour Township's zoning ordinance.