# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Russell Berner and Donna Berner,   :
Kendall Dobbins, Robert D. Clark   :
and Robert W. Webber,   :
               Appellants   :    No. 448 C.D. 2017
                        :    Argued: December 4, 2017
        v.   :
                        :
Montour Township Zoning Hearing   :
Board and Scott Sponenberg   :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**               **FILED: January 4, 2018**

This zoning case returns to us following our remand in Berner v. Montour Township Zoning Hearing Board (Berner I) (Pa. Cmwlth., No. 881 C.D. 2015, filed February 8, 2016), 2016 WL 464225 (unreported). In Berner I, we returned this matter to the Montour Township Zoning Hearing Board (ZHB) for additional findings on Scott Sponenberg's (Applicant) special exception application for his proposed swine nursery barn and under building for manure storage. On remand, the ZHB made additional findings and granted Applicant's special exception application. The Court of Common Pleas of the 26th Judicial District (Columbia County Branch) (trial court) affirmed.

In this appeal, Objectors[1] argue the ZHB erred in granting Applicant's special exception request based on its determination that one of the special exception

---

[1] Objectors are Russell and Donna Berner, Kendall Dobbins, Robert D. Clark, and Robert W. Webber.

requirements for Applicant's proposed use was subjective and vague, and, therefore, not a specific requirement that Applicant was required to satisfy to obtain special exception approval. They also contend the ZHB exceeded the scope of our remand order in Berner I when it determined, in the alternative, that the Nutrient Management Act (NMA), 3 Pa. C.S. §§501-522, preempted the disputed special exception requirement. Upon review, we conclude the ZHB erred in determining Applicant did not bear the burden of proof regarding compliance with the special exception requirement at issue. Further, the ZHB erred in determining, in the alternative, that the NMA's regulations preempted this special exception requirement so as to excuse Applicant's non-compliance with that provision. Therefore, we reverse.

## I. Background

In Berner I, we set forth the following background to this matter. Applicant owns the property located at 140 Tower Drive (property) in Montour Township (Township), Columbia County. The property lies in an agricultural zoning district.

In April 2013, Applicant filed an application for a special exception with the ZHB for his proposed intensive agricultural use. Specifically, Applicant seeks to construct a 78½ foot by 201 foot (15,778½ square foot) swine nursery barn with under building concrete manure storage with a usable capacity of approximately 645,000 gallons. Applicant's special exception application included a completed application form, site plans prepared by TeamAg, Applicant's consultant, a Manure Management Plan prepared by Todd Rush of TeamAg, who is a state certified nutrient management specialist, correspondence from Rush, and the

2

Pennsylvania Department of Environmental Protection's (DEP) Manure Management Plan Guidance document. A hearing ensued before the ZHB at which Applicant and Rush testified.[2]

After the hearing, the ZHB issued a decision in which it granted Applicant's special exception application subject to two conditions. Objectors appealed to trial court. Ultimately, the trial court determined public notice of the ZHB hearing was deficient. Thus, the trial court remanded to the ZHB for the purpose of taking additional testimony from any person who was not present at the ZHB hearing, after proper public notice of the new hearing was provided.

On remand, the ZHB held two hearings at which it heard testimony from several Objectors, Dennis R. Peters, P.E., of Peters Consultants regarding the condition of Tower Road, Brian Oram, a professional geologist and soil scientist, and Rush concerning manure application.

After the remand hearings, the ZHB unanimously reaffirmed its prior decision granting Applicant's special exception application subject to two conditions. In a written opinion in support of its decision, the ZHB made the following findings and conclusions.

The property is currently used as a livestock and crop farm. It is improved with a farmhouse, a cattle barn, two equipment sheds and several

---

[2] In July 2015, this Court upheld a decision of the Montour Township Board of Supervisors that approved, subject to conditions, Applicant's land development application and plan. See Berner v. Montour Twp., 120 A.3d 433 (Pa. Cmwlth. 2015).

outbuildings. The proposed swine nursery would include a swine nursery barn with under building manure storage. The manure from the swine nursery will be spread on portions of the property and on other leased fields as indicated in the Manure Management Plan included with the application.

Rush prepared the Manure Management Plan and provided testimony detailing the proposed use and its compliance with applicable state and federal statutes and regulations.

Section 402(1)(E) of the zoning ordinance provides that "Intensive Agriculture and Agricultural Support," which specifically includes hog raising, is permitted by special exception in an agricultural district. The ZHB determined Applicant's proposed swine nursery qualifies as an Intensive Agriculture and Agricultural Support use as defined by the zoning ordinance.

Further, Section 402(1)(E) of the zoning ordinance sets forth seven specific criteria that an Intensive Agriculture use must satisfy. The ZHB concluded Applicant satisfied each of these criteria through his application, exhibits and testimony. Additionally, Section 1101(3) of the zoning ordinance sets forth six general criteria for the granting of a special exception. The ZHB concluded Applicant satisfied each of those general criteria through his application, exhibits and testimony.

Objectors presented the testimony of neighboring property owners, Dennis Peters and Brian Oram. Objectors raised concerns about the proposed use

regarding odor, manure application, potential contamination of groundwater, disease, traffic and diminution in property value.

Peters testified regarding increased truck traffic on Tower Drive from the proposed use and its impact on the condition of Tower Road. On cross-examination, Peters acknowledged he had not consulted with the Township regarding its upcoming scheduled road repairs and maintenance for Tower Road. Further, on cross-examination, it was revealed that Peters used incorrect finish weight data for the hogs from the proposed nursery for his truck calculations resulting in incorrect and overstated truck traffic calculations. The correct finish weight data was included in the application.

Oram, a soils scientist, presented testimony on the soil suitability of the property and the leased fields for land application of manure. Oram concluded the soils on the property and the leased fields were not suitable for manure application from the proposed swine nursery based on the Natural Resources Conservation Service's (NRCS) Websoils Survey.

However, on cross-examination, it was revealed that Oram: (1) is not a state-certified nutrient management specialist; (2) did not conduct any soil or groundwater sampling on the property; (3) did not review Applicant's testimony or exhibits from the initial hearing regarding the proposed use; (4) did not reference or utilize the NRCS Website's seasonal high water table data when forming his opinion regarding soil suitability; (5) did not consult with any NRCS representative in interpreting the information on the NRCS website; (6) did not consult with any

representative of the State Conservation Commission in forming his opinion regarding soil suitability for manure application; (7) has only performed this type of soil analysis on one other occasion for a hog operation; and, (8) does not have a working knowledge of the NRCS' Code 590, which specifically relates to nutrient management and manure application.

The ZHB found the testimony presented by Applicant and Rush credible. Further, it found not credible certain aspects of the testimony presented by Peters and Oram, although it did not identify which parts of that testimony it discredited.

Ultimately, the ZHB concluded Applicant's proposed swine nursery qualified as an Intensive Agricultural and Agricultural Support use under the zoning ordinance. The ZHB further concluded Applicant met the zoning ordinance's objective criteria for such a use under Section 402(1)(E) of the zoning ordinance and the general requirements for a special exception under Section 1101(3) of the zoning ordinance. Thus, the ZHB determined Applicant's special exception application was entitled to approval under those sections of the zoning ordinance, subject to conditions. Without explanation, the ZHB also concluded the preemption language in Section 519(b) of the NMA applied to Applicant's proposed use.

6

Based on these determinations, the ZHB granted Applicant's special exception request pursuant to Sections 402(1)(E) and 1101(3) of the zoning ordinance subject to two conditions.[3] Objectors again appealed to the trial court.

Without taking additional evidence, the trial court issued an order denying Objectors' appeal. Objectors appealed to this Court.

Ultimately, this Court determined the ZHB did not clearly decide the matter on the basis of preemption. Specifically, the ZHB made one finding in which it quoted the language of Section 519(b) of the NMA. It also made one conclusion of law in which it stated: "The Section 519(b) preemption language of [the NMA] is applicable to [Applicant's] proposed swine nursery use." ZHB Op., Concl. of Law No. 10. However, the ZHB offered no explanation or analysis in support of this vague conclusion.

To that end, this Court's review of the ZHB's decision revealed the ZHB did not base its decision to grant Applicant's special exception application on the ground that the NMA or its regulations preempted the zoning ordinance. Indeed, the ZHB did not identify any conflict between the NMA or its regulations and the relevant zoning ordinance provisions. Rather, the ZHB based its decision to grant Applicant's special exception request on the ground that Applicant satisfied the

_____

[3] Specifically, the ZHB attached the following conditions: (1) Applicant shall secure the deceased animal disposal composting area so as to make the same inaccessible to scavengers; and, (2) Applicant shall produce an annual report in January 2015 and every year thereafter that certifies to the Township's Zoning Officer that Applicant's animal equivalent units do not meet or exceed the current level of 2.0 which would render Applicant ineligible for the current special exception and would place Applicant's use into the category of a Concentrated Animal Operation or a Concentrated Animal Feeding Operation.

zoning ordinance's specific and general criteria to obtain the requested special exception. Further, the trial court did not base its affirmance of the ZHB's decision on preemption grounds. As a result, we examined the ZHB's determinations that Applicant satisfied the zoning ordinance's special exception criteria.

After setting forth the standards governing special exceptions, this Court explained that Section 401(3) of the zoning ordinance states:

> Uses Permitted by Special Exception—A use listed in § 402 is permitted in any district under which it is denoted by the letter 'S', provided the [ZHB] authorizes the issuance of a zoning permit by the Zoning Officer, subject to the specific requirements contained in the table of use regulations and in § 1101(3), as well as all other applicable requirements of this chapter and such further restrictions that [the ZHB] may establish.

Id. In turn, Section 402 of the zoning ordinance provides, in pertinent part:

> 1. Agricultural Uses
>
> * * * *
>
> E. Intensive Agriculture and Agricultural Support ...
>
> Commercial feedlots, veal finishing, <u>hog raising</u>, poultry breeding or egg or meat production operations, livestock auctions, wholesale produce centers, fertilizer and seed distributors, commercial horse farms, grain storage and feed mills, <u>and similar uses shall submit facility designs and legally binding assurances with performance guarantees which demonstrate that all facilities necessary for manure and wastewater management, materials storage, water supply and processing or shipping operations will be conducted without adverse impact upon adjacent properties. For purposes of this chapter, adverse impacts may include, but are not limited to, groundwater</u>

8

and surface water contamination, groundwater supply diminution, noise, dust, odor, heavy truck traffic, and migration of chemicals offsite. Intensive agriculture and agriculture support uses shall be subject to the following:

(1) Where such uses adjoin a residential district or highway commercial district the intensive agriculture and agriculture support activity, including manure management facilities, shall be set back 400 feet from the property line.

(2) Disposal of deceased animals and birds shall be within 24 hours of death in accordance with State and Federal regulations. While awaiting removal of deceased animals and birds, the facility operator or farmer shall secure the location of the deceased from unauthorized access or scavengers and take precautions to minimize odor or other noxious effects.

(3) Off-street parking and loading shall comply with Part 8 of this chapter.

(4) Signs shall be permitted only as specified in Part 7 of this chapter.

(5) A paved apron or gravel scraping area or other effective means of cleaning of mud and manure to prevent tracking off-site and onto public roadways shall be provided.

(6) Manure management facilities shall be designed, constructed and operated in compliance with Bureau of Water Quality Management Publication No. 43, 'Manure Management for Environmental Protection,' and any revisions, supplements, and replacement thereof, published by [DEP]. Plans for manure management facilities and any changes thereto during construction shall be reviewed by the Columbia County Conservation District, with proof of their review prior to issuance of a zoning permit.

(7) Manure management facilities shall be secured from unauthorized access.

Section 402(1)(E) of the zoning ordinance (emphasis added).

In addition, Section 1101(3) of the zoning ordinance states, in pertinent part:

> Special Exception Applications. … [S]pecial exceptions may be granted or denied by the [ZHB] pursuant to express standards and criteria. The [ZHB] shall hear and decide requests for such special exceptions in accordance with such standards and criteria. In granting a special exception, the [ZHB] may attach such reasonable conditions and safeguards, in addition to those expressed in the chapter, as it may deem necessary to implement the purposes of this chapter. The [ZHB] shall pursue the following procedure.
>
> * * * *
>
> B. No application for a permit shall be granted by the [ZHB] for any special exception use until [the ZHB] has first received and considered an advisory report thereon from the Planning Commission with respect to the location of such use in relation to the needs and growth pattern of the area and, where appropriate, with reference to the adequacy of the site area and arrangement of buildings, driveways, parking areas, off-street truck loading spaces and other pertinent features of the site plan. The Planning Commission shall have 30 days from the date of its receipt of the application within which to file its report thereon. In the event that said Commission shall fail to file its report within such 30 days, such application shall be deemed to have been approved by said Planning Commission ….
>
> The [ZHB] may thereafter direct the Zoning Officer to issue such permit if, in its judgment, the use meets all specific provisions and criteria contained in this chapter and the following general provisions.

(1) In accordance with the Comprehensive Plan and consistent with the spirit, purposes and intent of this chapter;

(2) In the best interest of the community, the public welfare and a substantial improvement to the property in the immediate vicinity;

(3) Suitable for the property in question and designed, constructed, operated and maintained so as to be in harmony with and appropriate in appearance to the existing or intended character of the general vicinity;

(4) In conformance with all applicable requirements of this chapter;

(5) Suitable in terms of effects on highway traffic and safety, with adequate access arrangements to protect streets from undue congestion and hazard; and

(6) In accordance with sound standards of subdivision practice, where applicable ….

Id.

In Berner I, this Court explained that the ZHB made three conclusory findings. Specifically, the ZHB found: (1) Applicant's proposed use qualifies as an Intensive Agriculture use as defined in Section 402(1)(E); (2) Applicant's proposal satisfies the specific special exception criteria in Section 402(1)(E)(1)-(7); and, (3) Applicant's proposal satisfies the general special exception criteria set forth in Section 1101(3). Despite these three conclusory findings, the ZHB did not identify the relevant special exception criteria, and it did not make any determinations that explained how Applicant satisfied each of these criteria.

11

For example, Objectors asserted Applicant did not submit "facility designs and legally binding assurances with performance guarantees which demonstrated that all facilities necessary for manure and wastewater management, materials storage, water supply and processing or shipping operations will be conducted without adverse impact upon adjacent properties ... [including] ... groundwater and surface water contamination ..." as required by Section 402(1)(E) of the zoning ordinance. Berner I, Slip Op. at 19, 2016 WL 464225 at *9. Objectors argued such legally binding assurances with performance guarantees were not of record. They further asserted Applicant did not present substantive evidence whether natural hazards, such as unstable soils, existed in close proximity to the proposed swine nursery use, as required by Section 604 of the zoning ordinance. The ZHB made no specific findings on these issues.

In addition, despite its citation to Bray v. Zoning Board of Adjustment, 410 A.2d 909, 912-13 (Pa. Cmwlth. 1980), the ZHB made no mention of the fact that Objectors (and not Applicant) bore the "initial evidence presentation duty" or "persuasion burden" as to at least some of these criteria.

In the absence of necessary findings on these factual issues, we remanded to the trial court with directions to remand to the ZHB for findings regarding Sections 402(1)(E) and 1101(3) of the zoning ordinance.[4]

---

[4] Further, based on our disposition, we deemed it unnecessary to address Objectors' argument that the ZHB capriciously disregarded competent evidence of the unsuitability of the soil for application of manure and the condition of Tower Drive when it determined Applicant satisfied the special exception criteria in Section 402(1)(E) of the zoning ordinance.

On remand, the ZHB held a hearing limited only to oral argument. Because this Court did not direct the ZHB to take additional evidence, the ZHB's Solicitor allowed counsel for Applicant and Objectors to file proposed findings of fact and conclusions of law, which they did.

After argument, the ZHB members read the parties' proposed findings and conclusions, and the ZHB voted 3-0 to adopt Applicant's proposed supplemental findings and conclusions, thereby granting Applicant's special exception application. In its supplemental findings and conclusions, the ZHB determined that the language of Section 402(1)(E) of the zoning ordinance, which requires uses such as hog raising to "submit facility designs and legally binding assurances with performance guarantees which demonstrate that all facilities necessary for manure and wastewater management, materials storage, water supply and processing or shipping operations will be conducted without adverse impact upon adjacent properties" was subjective and vague. As a result, the ZHB determined Applicant did not bear the burden of proving it complied with this requirement; rather, Objectors bore the burden of proving that Applicant's proposed use would generate adverse impacts not normally expected from this type of use. Alternatively, the ZHB determined the NMA and its regulations preempted this zoning ordinance provision, and, therefore, Applicant was excused from complying with this provision. Objectors appealed to the trial court.

Without taking additional evidence, the trial court upheld the ZHB's decision. This appeal by Objectors followed.

**II. Issues**

13

On appeal,[5] Objectors argue the ZHB erred in determining that the requirement to submit "facility designs and legally binding assurances with performance guarantees which demonstrate all facilities … will be conducted without adverse impact upon adjacent properties" was "aimed at avoiding a general detrimental impact, is subjective, and vague" and therefore was not a specific criterion for Applicant to satisfy for special exception approval. Appellants' Br. at 2. They further assert the ZHB exceeded the scope of this Court's remand order in Berner I when it adopted Applicant's proposed findings and conclusions that the requirements in Section 402(1)(E) of the zoning ordinance were preempted by Section 519(6) of the NMA, 3 Pa. C.S. §519(6).

### III. Discussion
### A. Section 402(1)(E) of the Zoning Ordinance
### 1. Contentions

Objectors first assert that in Berner I, this Court observed that the ZHB made three conclusory findings regarding Applicant's compliance with the applicable special exception criteria. In Berner I, this Court determined that, despite these three conclusory findings, the ZHB did not identify the relevant special exception criteria, and it did not make any determinations that explained how Applicant satisfied each of these criteria.

---

[5] Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. Taliaferro v. Darby Twp. Zoning Hearing Bd., 873 A.2d 807 (Pa. Cmwlth. 2005).

14

To that end, as an example of a specific criterion that was not identified by the ZHB, this Court pointed to Objectors' argument regarding the required submission of facility designs and legally binding assurances as set forth in Section 402(1)(E) of the zoning ordinance. Objectors asserted Applicant did not submit "facility designs and legally binding assurances with performance guarantees which demonstrated that all facilities necessary for manure and wastewater management, materials storage, water supply and processing or shipping operations would be conducted without adverse impact upon adjacent properties because of surface and groundwater contamination," as required by Section 402(1)(E). Objectors maintain such legally binding assurances with performance guarantees are not of record.

On remand, Objectors argue, the trial court affirmed the ZHB's adoption of Applicant's contention that "the portion of [z]oning [o]rdinance § 402(1)(E) requiring that facility designs for manure management not cause 'adverse impacts' is aimed at avoiding a general detrimental impact, is subjective, and vague." Reproduced Record (R.R.) at 707a-08a. To the contrary, Objectors assert the zoning ordinance provides specific examples of adverse impacts. Section 402(1)(E) states "adverse impacts may include, but are not limited to, groundwater and surface water contamination, groundwater supply diminution, noise, dust, odor, heavy truck traffic, and migration of chemicals offsite." Id.

Objectors further contend that whether a particular special exception criterion is specific or general is a question of law under Bray. Objectors assert there is no basis to defer to the ZHB's interpretation of whether the requirement to submit

15

facility designs and legally binding assurances with performance guarantees is a specific or a general requirement. They further maintain that, from a common sense standpoint, placing the burden on Objectors to submit facility designs and legally binding performance guarantees is not practical or likely even possible.

Applicant[6] responds that in its original findings the ZHB found: "Section 402(1)(E) lists seven specific criteria that an Intensive Agriculture and Agricultural Use must meet." R.R. at 15a. Further, in its supplemental findings after remand, the ZHB clarified that Section 402(1)(E)(1)-(7) listed "seven objective criteria," R.R. at 655a, and that "[t]he only objective criteria set forth in § 402(1)(E) of the [z]oning [o]rdinance are the seven enumerated criteria listed in subparagraphs (1)-(7)." R.R. at 661a. Applicant argues the ZHB made numerous findings showing how his proposed swine nursery satisfied the seven specific criteria. R.R. at 655a-57a.

Applicant asserts Pennsylvania courts hold that a ZHB's interpretation of its zoning ordinance is entitled to great weight as representing the construction of a statute by the agency charged with its execution and application. In re Brickstone Realty Corp., 789 A.2d 333 (Pa. Cmwlth. 2001). He argues the ZHB expressly found that the portion of Section 402(1)(E) concerning the submission of facility designs and legally binding assurances with performance guarantees that activities will be conducted without "adverse impacts" upon adjacent properties did not define the term "adverse impact" or explain what was an acceptable impact. R.R. at 657a. Applicant contends the ZHB expressly found that "[t]he portion of [z]oning

---

[6] The ZHB did not file a brief in this matter.

16

[o]rdinance § 402(1)(E) requiring that facility designs for manure management not cause 'adverse impacts' is aimed at avoiding a general detrimental impact, [and] is subjective, and vague." R.R. at 662a.

Applicant notes that Objectors dispute the ZHB's interpretation and argue that Section 402(1)(E) identifies specific criteria, pointing only to the non-exclusive list of potential adverse impacts. Applicant counters that Section 402(1)(E) does not even identify all of the types of impacts that are considered adverse, much less provide a standard for determining when an impact becomes "adverse" under the zoning ordinance. Applicant argues that in Williams Holding Group, LLC v. Board of Supervisors of West Hanover Township, 101 A.3d 1202, 1212 (Pa. Cmwlth. 2014), this Court found that a similar provision requiring that a use be "minimally invasive" was aimed at avoiding a generally detrimental impact, which shifted the burden of proof to the objectors. Id. at 1216. Applicant maintains that in Williams Holding Group this Court reasoned that by defining "minimally invasive" vaguely, the ordinance "place[d] an unfair burden on developers who have no way to know whether a proposal will be 'minimally invasive' in the eyes of the adjudicator." Id.

Here, Applicant argues, the phrase "adverse impact" is just as vague and subjective as the phrase "minimally invasive" that the Court in Williams found was aimed at avoiding a generally detrimental impact that shifted the burden to the objectors. According to Bray and Williams, Applicant asserts, because Section 402(1)(E) of the zoning ordinance is general, subjective, and vague, it was Objectors' responsibility to show the proposed use would have an "adverse impact"

17

on adjoining properties. Applicant contends Bray places the initial evidence presentation duty of showing the use will have a general detrimental effect on the objectors. Applicant further argues Bray does not permit the ordinance to shift the initial evidence presentation duty from objectors where the ordinance provision is aimed at avoiding a general detrimental effect. Applicant asserts in Berner I, this Court pointed out that Objectors, and not Applicant, bore the initial evidence presentation duty or persuasion burden as to some of the zoning ordinance provisions at issue. Applicant contends the ZHB's supplemental findings and conclusions determined Objectors had the initial evidence presentation duty as to Section 402(1)(E), and they failed to meet that burden.

Applicant further maintains Objectors incorrectly suggest that the ZHB's interpretation of Section 402(1)(E) requires them to submit facility designs and legally binding performance guarantees. He argues Objectors' assertion ignores the fact that the requirement for facility designs and legally binding performance guarantees are related to "adverse impacts" on adjoining properties. Applicant asserts Objectors had the duty and burden of presenting evidence showing the proposed use would cause "adverse impacts" on adjacent properties. Williams; Bray.

To meet this heavy burden, Applicant contends, the evidence presented by Objectors had to show, to a high degree of probability, that the proposed use would generate adverse impacts not normally generated by this type of use, and that the impacts would pose a substantial threat to the health and safety of the community. See Greaton Props., Inc. v. L. Merion Twp., 796 A.2d 1038 (Pa. Cmwlth. 2002).

18

Applicant contends the ZHB here specifically found: "Objectors did not present any evidence indicating how the proposed use compared to other intensive agricultural uses." R.R. at 659a-60a. Further, the ZHB found: "Objectors did not present any credible evidence that the hog nursery and manure storage facility would adversely affect health, safety, and welfare of the public in a way not normally expected from an intensive agricultural use allowed … by special exception." R.R. at 660a. Because no adverse impact was established, Applicant maintains, the ZHB was not required to consider whether building plans or legally binding performance guarantees were appropriate.

In their reply brief, Objectors argue the parties do not dispute the standards for analyzing a special exception application. See Bray. Thus, if the language in Section 402(1)(E) establishes an objective standard, the burden is on Applicant. If, on the other hand, the language is deemed subjective, the burden is on Objectors. Objectors focus on the portion of that provision that requires "facility designs and legally binding assurances with performance guarantees" while Applicant focuses on the phrase "adverse impacts." Objectors contend the trial court affirmed the ZHB's adoption of Applicant's proposed finding and conclusion that the portion of Section 402(1)(E) requiring that facility designs for manure management not cause "adverse impacts" is aimed at avoiding a general detrimental impact and is subjective and vague.

Objectors note that Applicant relies on Williams Holding Group as support for his argument that the provision at issue is aimed at avoiding a general detrimental impact, is subjective and vague, and that the phrase "adverse impact" is

19

undefined and the zoning ordinance does not explain what constitutes an acceptable impact. Objectors assert <u>Williams Holding Group</u> is distinguishable. To that end, they point out, unlike the vague ordinance language at issue there (that utilized the phrase "minimally invasive" without additional guidance), here Section 402(1)(E) provides specific examples of "adverse impacts," including groundwater and surface water contamination, groundwater supply diminution, noise, dust, odor, heavy truck traffic, and migration of chemicals offsite. Objectors contend that the zoning ordinance language at issue here is clear and provides sufficiently objective criteria for a special exception applicant.

Moreover, Objectors argue, if it is determined that Section 402(1)(E) is subjective and vague, it does not make sense to require an objector to provide a "facility design and legally binding assurances with performance guarantees …." <u>Id.</u> Objectors maintain the trial court erred when it affirmed the ZHB's adoption of Applicant's position on whether the provision is subjective and vague. They contend the provision is clear in its examples of adverse impacts and the failure to provide the facility design and legally binding assurances with performance guarantees dictates that the trial court's order be reversed, and the ZHB be directed to deny the special exception application.

### 2. Analysis

In <u>Berner I</u>, we explained that a special exception is neither special nor an exception, but rather a use expressly contemplated that evidences a legislative decision that the particular type of use is consistent with the zoning plan and presumptively consistent with the health, safety and welfare of the community.

<u>Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of L. Heidelberg Twp.</u>, 918 A.2d 181 (Pa. Cmwlth. 2007).

An applicant for a special exception has both the duty of presenting evidence and the burden of persuading the ZHB that his proposed use satisfies the objective requirements of the zoning ordinance for the grant of a special exception. <u>Manor HealthCare Corp. v. L. Moreland Twp. Zoning Hearing Bd.</u>, 590 A.2d 65 (Pa. Cmwlth. 1991). Once the applicant meets his burden of proof and persuasion, a presumption arises that it is consistent with the health, safety and general welfare of the community. <u>Id.</u> The burden then normally shifts to the objectors to the application to present evidence and persuade the ZHB that the proposed use will have a generally detrimental effect on health, safety, and welfare. <u>Id.</u> The evidence presented by objectors must show, to a high degree of probability, that the use will generate adverse impacts not normally generated by this type of use and that these impacts will pose a substantial threat to the health and safety of the community. <u>Greaton Props.</u>

In <u>Bray</u>, this Court outlined the rules regarding the "initial evidence presentation duty (duty) and persuasion burden (burden) in special exception cases" as follows:

> <u>Specific requirements, e. g., categorical definition of the special exception as a use type or other matter, and objective standards governing such matter as a special exception and generally</u>:
>
> <u>The applicant has both the duty and the burden</u>.
>
> General detrimental effect, e. g., to the health, safety and welfare of the neighborhood:

21

Objectors have both the duty and the burden; the ordinance terms can place the burden on the applicant but cannot shift the duty.

General policy concern, e. g., as to harmony with the spirit, intent or purpose of the ordinance:

Objectors have both the duty and the burden; the ordinance terms cannot place the burden on the applicant or shift the duty to the applicant.

Id. at 912-13 (emphasis added).

In Bray, we further explained, "our cases have repeatedly made clear that the applicant has both the persuasion burden and the initial evidence presentation duty to show that the proposal complies with the 'terms of the ordinance' which expressly govern such a grant." Id. at 910. This rule means that the applicant must bring the proposal within the specific requirements expressed in the ordinance for the use (or area, bulk, parking or other approval) sought as a special exception. Those specific requirements, standards or "conditions" can be classified as follows:

1. The kind of use (or area, bulk, parking or other approval)—i.e., the threshold definition of what is authorized as a special exception;

2. Specific requirements or standards applicable to the special exception—e.g., special setbacks, size limitations; and

3. Specific requirements applicable to such kind of use even when not a special exception—e.g., setback limits or size maximums or parking requirements applicable to that type of use whenever allowed, as a permitted use or otherwise.

Id. at 911.

22

At issue here is a portion of Section 402(1)(E) of the zoning ordinance, which permits by special exception in the agricultural zoning district:

1. Agricultural Uses

* * * *

E. Intensive Agriculture and Agricultural Support

Commercial feedlots, veal finishing, hog raising, poultry breeding or egg or meat production operations, livestock auctions, wholesale produce centers, fertilizer and seed distributors, commercial horse farms, grain storage and feed mills, and similar uses <u>shall submit facility designs and legally binding assurances with performance guarantees which demonstrate that all facilities necessary for manure and wastewater management, materials storage, water supply and processing or shipping operations will be conducted without adverse impact upon adjacent properties. For purposes of this chapter, adverse impacts may include, but are not limited to, groundwater and surface water contamination, groundwater supply diminution, noise, dust, odor, heavy truck traffic, and migration of chemicals offsite</u>. …

In <u>Berner I</u>, the ZHB made no specific findings regarding Section 402(1)(E); therefore, we remanded for findings regarding this provision.

On remand, the ZHB made the following findings and conclusions concerning Section 402(1)(E) of the zoning ordinance:

27. Section 402(1)(E) requires submission of facility designs and legally binding assurances with performance guarantees that demonstrate that manure management facilities will be conducted without adverse impact upon adjacent properties.

28. The term 'adverse impact' used in §402(1)(E) is not defined and there are no standards in the [z]oning [o]rdinance concerning what constitutes an 'adverse impact' and what is an acceptable impact.

* * * *

36. The [ZHB] was presented with a hydrogeologic review and opinion by Advantage Engineers, which opinion was prepared for the Township by its retained hydrogeologist, as to the proposed hog nursery barn at [Applicant's] property which concluded that '[o]verall, there should be minimal risk to the underlying bedrock aquifer and nearby wells from a well-managed facility of this kind with properly applied manure and suitable storm water management, barring a catastrophic manure tank failure or substantial and ongoing leak from the manure tank.' (ZHB, Ex. 07, February 26, 2014.)

37. The hydrogeologic report was based on, *inter alia*, a review of Applicant's manure management plan, construction plans, land development plan, a geologic study, and professional planner comments. (*Id.*)

38. Objectors did not present any evidence indicating how the proposed use compared to other intensive agricultural uses.

39. Objectors' witness concerning soil suitability for manure application was Brian Oram, who repeatedly admitted that he could not confirm whether the information he relied upon was accurate and could not reach a conclusion about whether or not the soil was suitable for application of manure absent further investigation.

24

40. Despite testifying about the suitability of the soil for manure application, Mr. Oram is not [a] certified nutrient management specialist. (ZHB Tr., Vol II 143-44, April 2, 2014.)

41. Although he relied almost exclusively on the [NRCS] [W]ebsoils [S]urvey, Mr. Oram stated that it was only a planning tool and 'it should not make the final decisions.' (ZHB Tr. Vol. II, 170, April 2, 2014.)

42. In reference to the NRCS websoils survey he relied upon, Oram stated '[m]aybe the soil mapping is incorrect. Maybe it's right.' (*Id.* at 168.)

43. In response to a question whether it was possible that the hog nursery would not contaminate wells, Mr. Oram conceded that it was possible 'with proper management.' (*Id.* at 180.)

44. Oram's testimony lacked credibility and was speculative at best.

* * * *

51. Objectors did not present any credible evidence that the hog nursery and manure storage facility would adversely affect health, safety, and welfare of the public in a way not normally expected from an intensive agricultural use allowed as of right by special exception.

* * * *

53. Applicant's proposed use qualifies as Intensive Agriculture and Agriculture Support under the [zoning ordinance] because it involves raising hogs.

* * * *

55. Applicant met his burden of proof and persuasion that the proposed hog nursery met the objective requirements of the [zoning ordinance].

* * * *

25

57. Because Applicant met his burden of proof and persuasion that the proposed hog nursery met the objective requirements imposed by the [zoning ordinance], a presumption arises that it is consistent with the health, safety, and general welfare of the community. [*Manor HealthCare*].

58. 'An applicant who satisfies this [*prima facie*] burden is entitled to approval, unless objectors in the proceeding offer credible and sufficient evidence indicating that the proposed use would have a detrimental impact on public health, safety, and welfare.' [*Williams Holding Group*, 101 A.3d at 1212].

59. Because [Applicant] showed that his proposed use met the objective criteria set forth in the [zoning ordinance], the burden shifted to [Objectors] to present credible evidence and persuade the ZHB that the proposed use will have a generally detrimental effect on health[,] safety[,] and welfare.

* * * *

62. The portion of [zoning ordinance] §402(1)(E) requiring that facility designs for manure management not cause 'adverse impacts' is aimed at avoiding a general detrimental impact, is subjective, and vague.

63. It was [Objectors'] burden to prove general detrimental impacts and whether 'adverse impacts' would occur. See, [*Bray*, 410 A.2d at 911]; see also [*Williams Holding Group*, 101 A.3d at 1212].

64. To meet their heavy burden, the evidence presented by [Objectors] must show, to a high degree of probability, that the use will generate adverse impacts not normally generated by the type of use and that the impacts will pose a substantial threat to the health and safety of the community. [*Greaton Props*].

65. Objectors have both the initial evidence presentation duty (duty) and persuasion burden (burden) to prove

general detrimental effects to the health, safety and welfare. *Bray*, 410 A.2d at 912-13.

66. Objectors failed to demonstrate that the impact from the proposed hog nursery farm would be greater than would normally be expected from that type of use and that it would pose a substantial threat to the health, safety and welfare of the community.

ZHB Op., 5/24/16, F.F. Nos. 27-28, 36-44, 51; Concls. of Law Nos. 53, 55, 57-59, 62-66.

The ZHB erred in determining that the language of Section 402(1)(E) of the zoning ordinance at issue here is subjective and vague and, therefore, that Objectors bore the initial evidence presentation duty and persuasion burden regarding this provision. As set forth above, the language at issue states that applications for uses such as Applicant's proposed swine nursery "shall submit facility designs and legally binding assurances with performance guarantees which demonstrate that all facilities necessary for manure and wastewater management, materials storage, water supply and processing or shipping operations will be conducted without adverse impact upon adjacent properties." Section 402(1)(E) of the zoning ordinance (emphasis added). Further, "adverse impacts may include, but are not limited to, groundwater and surface water contamination, groundwater supply diminution, noise, dust, odor, heavy truck traffic, and migration of chemicals offsite." Id.

Contrary to the ZHB's determinations, the requirement that an applicant submit facility designs and legally binding assurances with performance guarantees that demonstrate that all facilities necessary for, among other things,

27

manure and wastewater management and water supply will be conducted without adverse impact on adjacent properties is not subjective or vague. Rather, the requirement is a specific, objective one; therefore, Applicant bore the burden of showing it made the required submissions. Bray. The ZHB did not find that Applicant made these submissions here, and Applicant does not assert that it did so.

Our determination that the disputed language in Section 402(1)(E) constitutes a specific requirement rather than a subjective, general one, is bolstered by the facts that: (1) the provision requires an applicant to make certain clearly identified submissions; (2) the requirement for these submissions, by its own terms, applies only to certain, identified intensive agriculture uses such as Applicant's proposed swine nursery rather than all intensive agriculture uses generally; and, (3) the provision expressly enumerates the categories of adverse impacts that it is aimed at avoiding. Thus, the zoning ordinance provision would apply to such items as, for example: (a) performance criteria or warranty information from the supplier of a manure tank, the supplier of any liners, the supplier of any pumps, or the suppliers of other equipment; (b) proposed construction contracts containing binding performance criteria or warranties of workmanship; (c) proposed contracts for operations which include performance criteria or standards; and, (d) an *approved* nutrient management plan, discussed more fully below. These types of items would be in the primary control of an applicant.

Further, Williams Holding Group, relied on by Applicant, does not compel a different result. There, the conditional use criterion at issue stated: "Any construction within any [environmental protection overlay district] shall be

28

minimally invasive and use best management practices, as defined by [the Pennsylvania Department of Environmental Protection and United States Army Corps of Engineers]." Id. at 1207. This Court determined this provision, by its own terms, related to *construction* rather than *uses*. In particular, we explained the provision related "to the manner in which construction is performed, rather than … a standard or requirement relative to [the] [d]eveloper's initial burden regarding its proposed use …." Id. at 1215. This Court further determined the provision was ambiguous because the phrase "minimally invasive" was not defined and contained no definitive guidelines; as such, we interpreted the ambiguity in favor of the developer. Id. We further held the provision was subjective as it was unclear what standard a developer would need to meet to satisfy the provision's terms; as a result, under Bray, any objectors bore the burden to present evidence that the developer's proposed construction had an impact beyond that normally associated with the type of conditional use at issue. Additionally, this Court determined, even if the criterion was deemed an objective one and the developer bore an initial burden to show its proposal satisfied the standard, the developer *did* satisfy its initial burden to prove compliance, and no party offered evidence in opposition to the developer's evidence.

Here, unlike in Williams Holding Group, the language is not ambiguous; rather, it requires an applicant to make certain identified submissions. Additionally, unlike the criterion at issue in Williams Holding Group, Section 402(1)(E) of the zoning ordinance provides specific, illustrative examples of the type of "adverse impacts" to which it refers. Also, unlike the developer in Williams Holding Group, Applicant does not assert it submitted evidence to satisfy the requirement at issue.

29

## B. Preemption
### 1. Contentions

Objectors next argue that in <u>Berner I</u>, this Court held that the ZHB did not clearly decide this matter on the basis of preemption. To that end, in its initial written determination, the ZHB quoted Section 519(b) of the NMA, but it made no specific findings as to whether the NMA preempted any zoning ordinance provision. The ZHB further determined that the Section 519(b) preemption language applied to Applicant's proposed swine nursery; however, it failed to identify any zoning ordinance provision that conflicted with state law. Objectors argue they may only conclude that the ZHB assumed that Section 519(b) occupied the entire field and totally preempted any local regulation of intensive farming, such as Applicant's proposed swine nursery use. Objectors maintain this was error.

To that end, Objectors contend Section 519(b) of the NMA provides for "conflict preemption." They assert this Court interpreted the NMA's conflict preemption provision in a number of cases. <u>See</u> <u>Burkholder v. Zoning Hearing Bd. of Richmond Twp.</u>, 902 A.2d 1006 (Pa. Cmwlth. 2006); <u>see</u> <u>also</u> <u>Commonwealth v. Locust Twp.</u>, 49 A.3d 502 (Pa. Cmwlth. 2012); <u>Walck v. L. Towamensing Twp. Zoning Hearing Bd.</u>, 942 A.2d 200 (Pa. Cmwlth. 2008).

Here, Objectors argue, in Finding of Fact No. 36, the ZHB claimed Oram's testimony specifically dealt with the land application of animal manure and nutrients. They assert the ZHB disregarded Oram's testimony, apparently believing state law preempted any local regulation of land application of manure. To the contrary, Objectors contend, Oram testified to the suitability of the soil to handle the

30

application of over one million gallons of manure annually. R.R. at 307a-19a, 341a-64a. Objectors assert state law does not regulate soil suitability. Therefore, there is no conflict between the zoning ordinance and the NMA. As a result, they maintain, the zoning ordinance is not preempted. Objectors argue that, the ZHB, in its adoption of Applicant's proposed findings and conclusions, included determinations based on preemption. They contend that, in so doing, the ZHB exceeded the scope of this Court's remand order in Berner I.

Applicant responds that the ZHB's supplemental findings and conclusions were consistent with its prior findings and conclusions, addressed the issues identified in Berner I, and were within the scope of this Court's remand order, which returned the case to the ZHB for additional findings.

Applicant argues that in Berner I, this Court acknowledged that the ZHB referenced the preemption language in Section 519(b) of the NMA without explanation and offered no explanation or analysis for its finding that the Section 519(b) preemption language applied to the proposed use. Thus, Applicant asserts, this Court identified that the ZHB relied on preemption, but indicated the ZHB did not clearly decide this matter on the basis of preemption. Because the ZHB initially relied on the NMA in explaining its decision, Applicant contends, the ZHB did not err in adopting findings and conclusions explaining why it referenced those matters in its initial decision.

Applicant further maintains Objectors' challenge to the ZHB's determinations regarding the NMA is based on faulty assumptions that are

31

contradicted by the ZHB's supplemental findings and conclusions. Applicant argues the ZHB's supplemental findings and conclusions explained that various aspects of Section 402(1)(E) were inconsistent with and more stringent than the NMA's regulations that govern construction of manure storage facilities. R.R. at 663a-64a.

Applicant also contends Objectors did not challenge the ZHB's finding of a conflict between the zoning ordinance and the NMA. Instead, Objectors assert the ZHB disregarded Oram's testimony apparently believing state law preempted any local regulation of land application of manure. Applicant argues Objectors' contention is contradicted by the ZHB's supplemental conclusion of law expressly acknowledging the existence of conflict preemption under the NMA. Applicant further asserts the inclusion of the NMA and preemption-related findings and conclusions in the ZHB's supplemental decision, if improper, is harmless error. He contends no remand or additional action by the ZHB is necessary because the ZHB's decision can be affirmed even if the findings addressing the NMA and preemption are ignored.

In their reply brief, Objectors argue that in their initial appeal in Berner I, they asserted the ZHB erred in failing to decide whether there was a conflict between the NMA and the zoning ordinance. The ZHB, without explanation, concluded the preemption language in Section 519(b) of the NMA applied to the proposed swine barn. In Berner I, this Court stated its review of the ZHB's decision revealed the ZHB did not base its decision to grant Applicant's special exception application on the ground that the NMA or its regulations preempted the zoning ordinance. Objectors maintain it was beyond the scope of the remand for the ZHB

32

to include additional findings and conclusions purporting to support preemption as a basis for Applicant's failure to comply with Section 402(1)(E) of the zoning ordinance.

## 2. Analysis

On the issue of preemption under the NMA, in Berner I, this Court explained:

> Contrary to the parties' assertions, the ZHB did not clearly decide this matter on the basis of preemption. Specifically, the ZHB made one Finding of Fact in which it quoted the language of Section 519(b) of the NMA. It also made one Conclusion of Law in which it stated: 'The Section 519(b) preemption language of [the NMA] is applicable to [Applicant's] proposed swine nursery use.' However, the ZHB offered no explanation or analysis in support of this vague conclusion.
>
> To that end, our review of the ZHB's decision reveals that the ZHB did not base its decision to grant Applicant's special exception application on the ground that the NMA or its regulations preempt the zoning ordinance. Indeed, the ZHB did not identify any conflict between the NMA or its regulations and the relevant provisions of the zoning ordinance. Rather, the ZHB based its decision to grant Applicant's special exception request on the ground that Applicant satisfied the general and specific criteria set forth in the zoning ordinance to obtain the requested special exception. Further, the trial court did not base its affirmance of the ZHB's decision on preemption grounds. As a result, we examine the ZHB's determinations that Applicant satisfied the special exception criteria in the zoning ordinance.

Berner I, slip op., at 11-12, 2016 WL 464225 at *5 (record citations omitted).

33

As set forth above, in Berner I, we remanded to the ZHB for findings concerning Applicant's compliance with the relevant special exception requirements set forth in the zoning ordinance. We did not specifically remand for additional determinations regarding preemption under the NMA; however, we did not preclude the ZHB from making such determinations. Therefore, contrary to Objectors' assertions, the ZHB did not exceed the scope of our remand order in Berner I by including determinations regarding preemption as it related to the relevant special exception requirements set forth in the zoning ordinance.

On remand, the ZHB made several determinations that the NMA and its regulations preempted the language set forth in Section 402(1)(E), addressed above. It is apparent that the ZHB made these determinations as an alternative to its determination that Objectors bore the initial presentation duty and the persuasion burden regarding the language in Section 402(1)(E), discussed above, and Objectors failed to satisfy their burden. Because the ZHB erred in determining that Objectors bore the initial presentation duty and the persuasion burden regarding the language in Section 402(1)(E), we consider whether the ZHB properly determined that the NMA and its regulations preempted the language in Section 402(1)(E).

With regard to the issue of preemption generally, in Berner v. Montour Township, 120 A.3d 433 (Pa. Cmwlth. 2015), we explained:

> [T]he mere fact that the General Assembly has enacted legislation in a field does not lead to the presumption that the state has precluded all local enactments in that field; rather, the General Assembly must clearly evidence its intent to preempt. Such clarity is mandated because of the severity of the consequences of a determination of preemption: If the General Assembly has

34

preempted a field, the state has retained all regulatory and legislative power for itself and no local legislation in that area is permitted. …

> There are three generally recognized types of preemption: (1) express or explicit preemption, where the statute includes a preemption clause, the language of which specifically bars local authorities from acting on a particular subject matter; (2) conflict preemption, where the local enactment irreconcilably conflicts with or stands as an obstacle to the execution of the full purposes of the statute; and (3) field preemption, where analysis of the entire statute reveals the General Assembly's implicit intent to occupy the field completely and to permit no local enactments. Both field and conflict preemption require an analysis of whether preemption is implied in or implicit from the text of the whole statute, which may or may not include an express preemption clause.

Id. at 441 (quoting Hoffman Mining Co., Inc. v. Zoning Hearing Bd. of Adams Twp., Cambria Cnty., 32 A.3d 587, 593-94 (Pa. 2011)).

The NMA contains a provision entitled, "Preemption of local ordinances," which states, in its entirety:

> **(a) General.**—This chapter and its provisions are of Statewide concern and occupy the whole field of regulation regarding nutrient management and odor management, to the exclusion of all local regulations.

> **(b) Nutrient management.**—No ordinance or regulation of any political subdivision or home rule municipality may prohibit or in any way regulate practices related to the storage, handling or land application of animal manure or nutrients or to the construction, location or operation of facilities used for storage of animal manure or nutrients or practices otherwise regulated by this chapter <u>if the municipal ordinance or regulation is in conflict with this</u>

35

chapter and the regulations or guidelines promulgated under it.

**(c) Odor management.**—No ordinance or regulation of a political subdivision or home rule municipality may regulate the management of odors generated from animal housing or manure management facilities regulated by this chapter if the municipal ordinance or regulation is in conflict with this chapter and the regulations or guidelines promulgated under it.

**(d) Stricter requirements.**—Nothing in this chapter shall prevent a political subdivision or home rule municipality from adopting and enforcing ordinances or regulations which are consistent with and no more stringent than the requirements of this chapter and the regulations or guidelines promulgated under this chapter. No penalty shall be assessed under any such local ordinance or regulation under this subsection for any violation for which a penalty has been assessed under this chapter.

3 Pa. C.S. §519 (emphasis added).

Construing this provision, this Court previously stated (with emphasis added):

The [NMA's] preemption language is as perplexing as it is verbose. Nonetheless, we take the following legislative intent from the General Assembly's chosen words. First, in passing the NMA, the General Assembly unmistakably intended to occupy 'the whole field' of nutrient and odor management in the Commonwealth (subsection (a)). To that end, the NMA prohibits the adoption and enforcement of any local ordinance that conflicts with the provisions of the NMA or 'regulations and guidelines promulgated under it' (subsections (b) and (c)). But, a municipality is free to adopt and enforce ordinances that 'are consistent with and no more stringent than' the NMA, its regulations, and its guidelines (subsection (d)).

36

Locust Twp., 49 A.3d at 506-07.

Significantly, "[t]he preparation and implementation of nutrient management plans [(NMPs)] is the centerpiece of the NMA." Burkholder, 902 A.2d at 1008 (citing Michael M. Meloy, AN OVERVIEW OF NUTRIENT MANAGEMENT REQUIREMENTS IN PENNSYLVANIA, 10 Penn St. Envtl. L. Rev. 249 (2002)). To that end, preparation and implementation of a properly reviewed and approved NMP is mandatory for operators of Concentrated Animal Operations (CAOs). 3 Pa. C.S. §506(b).

Here, in determining the NMA and its regulations preempted the relevant portion of Section 402(1)(E) of the zoning ordinance, the ZHB made the following determinations (with emphasis added):

> 29. The [NMA] regulates the application of manure to soil to protect ground and surface water and pre-empts local ordinances that conflict with the [NMA] and regulations promulgated pursuant to the [NMA].
>
> 30. Various regulations promulgated pursuant to the NMA set forth standards for manure application to soil and the minimum standards for the design, construction, location, operation, and maintenance of manure storage facilities. See, 25 Pa. Code §§ 83.251, 83.272, 83.281, 83.282, 83.292, 83.293, 83.294, 93.311, 83.312, 83.321, 83.342, 83.351, 83.381.
>
> 31. 25 Pa. Code §83.202, titled 'Scope' indicates that the regulations provide the criteria and requirements for '[t]he construction, location, design, installation and operation of animal manure storage facilities on NMP operations.' 25 Pa. Code §83.202.
>
> 32. The requirements for a manure storage facility are set forth in 25 Pa. Code §83.351, titled 'minimum standards

37

for the design, construction, location, operation, maintenance and removal from service of manure storage facilities.' See, 25 Pa. Code §83.351.

33. The NMA regulations concerning the design, construction, location and operation of manure storage facilities does not require the submission of legally binding assurances with performance guarantees.

34. The regulations promulgated pursuant to the NMA comprehensively set forth the standards for the design, construction, location, operation, and maintenance of manure storage facilities.

35. The NMA, 3 P.S. [sic] §519, states in pertinent part that 'No ordinance or regulation of any political subdivision or home rule municipality may prohibit or in any way regulate practices related to the storage, handling or land application of animal manure or nutrients or to the construction, location and operation of facilities used for storage of animal manure or nutrients ….' 3 Pa. C.S. § 519(b).

* * * *

68. The portion of Zoning Ordinance §402(1)(E) requiring that facility designs for manure management not cause 'adverse impacts' on adjacent properties is more restrictive than the requirements set forth in the NMA, conflicts with the NMA, and is pre-empted by the NMA.

69. The Commonwealth Court has stated that 'the NMA prohibits the adoption and enforcement of any local ordinance that conflicts with the provisions of the NMA or regulations and guidelines promulgated under it.' *Berner v. [Montour] Twp.*, 120 A.2d 433, 442 (Pa. Cmwlth. 2015) citing [*Locust Twp.*, 49 A.2d at 506-07].

70. 25 Pa. Code §83.351, titled 'minimum standards for the design, construction, location, operation, maintenance and removal from service of manure storage facilities,' does not require individuals or entities building manure storage facilities to provide legally binding assurances or

performance guarantees demonstrating that manure management facilities will be conducted without 'adverse impact' on adjacent properties.

71. The requirement in [zoning ordinance] §402(1)(E) that applicants submit legally binding assurances with performance guarantees that all manure management facilities will be conducted without 'adverse impacts' is more restrictive than the minimum standards set forth in the regulations promulgated pursuant to the NMA and is therefore in conflict with the NMA and its regulations.

72. Because there is a conflict between the regulations promulgated pursuant to the NMA and §402(1)(E), that section of the [zoning ordinance] that is more restrictive than the NMA is pre-empted.

F.F. Nos. 29-35; Concls. of Law Nos. 68-72.

In their brief to this Court, Objectors do not directly challenge the ZHB's determination that a conflict exists between the NMA and its regulations and Section 402(1)(E) of the zoning ordinance. Rather, they assert the ZHB disregarded the opinion testimony of their expert witness, Oram, regarding the unsuitability of soils on the property for the land application of manure, based on the ZHB's belief that the NMA and its regulations preempted any local regulation of land application of manure. Contrary to this assertion, the ZHB did not reject Oram's testimony on that basis. Rather, the ZHB determined Oram was not credible based on various flaws and speculation in his testimony. See F.F. Nos. 39-43.

Nevertheless, the ZHB erred in determining that Section 402(1)(E) is preempted by the NMA's regulations here so as to excuse Applicant's compliance with that ordinance provision. More particularly, in support of its finding of preemption, the ZHB determined a conflict existed between Section 402(1)(E) and

one of the NMA's regulations, 25 Pa. Code §83.351 ("Minimum standards for the design, construction, location, operation, maintenance and removal from service of manure storage facilities."). However, a careful reading of that regulation reveals that the standards set forth within it apply *only* to "new manure storage facilities and the expansion of existing manure storage facilities, <u>as part of a plan developed for an NMP operation</u>." 25 Pa. Code §83.351(a).

Here, Applicant presented the testimony of Todd Rush of TeamAg, a state certified nutrient management specialist. Rush testified that Applicant's proposed use is neither a CAO or a Concentrated Animal Feeding Operation (CAFO). R.R. at 28a. Rush further explained:

> So to answer your question specifically, if [Applicant's] operation would become a CAO, [Applicant] is required to notify [the] County Conservation District, and to also hire a Certified Plan Writer to develop a[n] [NMP] that meets the State Conservation Requirement for a CAO. That plan is submitted to the Conservation District and reviewed and approved by the Board of Directors. [Applicant] must maintain that plan and update it every three years versus now his proposed operation. Now he is not a CAO or a CAFO. So he is only required to do what any operation in the state that generates and handles manure does, and that is to have, maintain and implement a Manure Management Plan which we have developed for him. So he, that's a one and done. …

R.R. at 28a-29a.

In addition, when asked if Applicant's Manure Management Plan was approved by the state, Rush responded:

40

> The Manure Management Plan, it differs from a[n] [NMP] whereas they [sic] do not get reviewed or approved. They [sic] could be written by a Certified Plan Writer such as myself, which is the case, or it could be actually completed by the farmer. It is a workbook that is developed by the Department of Environmental Protection with guidelines and instructions on how to complete them. That does not get reviewed and approved in this case.

R.R. at 33a.

Because Applicant's proposed use does not require development of an NMP, the regulation cited by the ZHB, which applies only to new manure storage facilities that are constructed as part of a plan developed for an NMP operation, does not apply here.[7] See, e.g., Walck (in the absence of proof that applicants had an approved plan under the NMA, local zoning ordinance was not inconsistent with regulation under the NMA, and, therefore, was not preempted). Further, because the cited regulation does not apply here, the ZHB erred in determining that the regulation excused Applicant's non-compliance with Section 402(1)(E) of the zoning ordinance's requirement that Applicant submit facility designs and legally binding assurances with performance guarantees that demonstrate that all facilities necessary for manure management will be conducted without adverse impact on adjacent properties.

---

[7] While the NMA permits preparation and implementation of an approved nutrient management plan on a voluntary basis, see 3 Pa. C.S. §506(h), there is no indication here that Applicant has an approved voluntary nutrient management plan. Under the NMA's regulations, a voluntary nutrient management plan must comply with the detailed requirements set forth in the NMA and Sections 261 and 271 through 381 of the NMA's regulations, 25 Pa. Code §§83.261, 83.271-83.381. See 25 Pa. Code §83.272 ("Content of plans."); see also 25 Pa. Code §83.201 (defining "Plan"). Applicant does not assert it submitted this required information to the ZHB. As a result, Applicant did not prove compliance with the NMA through submission of an approved nutrient management plan.

In addition, our independent research reveals that Applicant's proposed manure storage facility and planned land application of manure is governed by a different regulation, 25 Pa. Code §91.36 ("Pollution control and prevention at agricultural operations"), which was not promulgated pursuant to the NMA. As such, the ZHB erred in determining the NMA's regulations preempted Section 402(1)(E) of the zoning ordinance so as to excuse Applicant's compliance with that provision.

Consequently, because Section 402(1)(E) is not preempted by the NMA or its regulations and because, as discussed in our analysis above, Applicant bore the burden of proving he complied with Section 402(1)(E) and did not do so, the ZHB erred in granting Applicant's special exception application.

Based on the foregoing, we reverse the trial court's decision, which affirmed the ZHB's decision granting Applicant's special exception application.[8]

ROBERT SIMPSON, Judge

---

[8] In light of our disposition of this matter, we need not address Objectors' final argument, that the ZHB capriciously disregarded competent evidence of the unsuitability of the soil for application of manure and the condition of Tower Road.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Russell Berner and Donna Berner,    :
Kendall Dobbins, Robert D. Clark    :
and Robert W. Webber,    :
             Appellants    :    No. 448 C.D. 2017
   :
         v.    :
   :
Montour Township Zoning Hearing    :
Board and Scott Sponenberg    :

## **O R D E R**

**AND NOW**, this 4th day of January, 2018, the order of the Court of Common Pleas of the 26th Judicial District (Columbia County Branch) is **REVERSED**.

_____
ROBERT SIMPSON, Judge